**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

ST. CASIMIR DEVELOPMENT CORP.,

Debtor.

Bankruptcy Appeal

Case No.  07 Civ 2908 (CM)

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**APPELLEES' BRIEF**

HELLER EHRMAN LLP
Russell L. Reid, Jr. (RR 2011)
Timothy S. Mehok (TM 5909)
Times Square Tower, 7 Times Square
New York, NY  10036-6524
Telephone:  (212) 832-8300
Facsimile:  (212) 763-7600

Attorneys for Appellees

# TABLE OF AUTHORITIES

## CASES

In re 234-6 West 22nd St. Corp.,
    214 B.R. 751 (Bankr. S.D.N.Y. 1997)....................................................15

In re 652 W. 160th L.L.C.,
    330 B.R. 455 (Bankr. S.D.N.Y. 2005)....................................................17

In re Adelphia,
    359 B.R. 65 (Bankr. S.D.N.Y. 2007)...................................................29-31

Albany Partners, Ltd. v. W.P. Westbrook, Jr. (In re Albany Partners, Ltd.),
    749 F.2d 670 (11th Cir. 1984) ........................................................16, 18

Baker v. Dorfman,
    239 F.3d 415 (2d Cir. 2000)..............................................................36

Bambu Sales, Inc. v. Testini,
    1989 WL 29990 (E.D.N.Y. March 21, 1989) .........................................4

Boston Post Road Ltd. P'ship v. FDIC (In re Boston Post Road Ltd. P'ship),
    21 F.3d 477 (2d Cir. 1994)................................................................24

Breeden v. Catron (In re Catron),
    158 B.R. 624 (Bankr. E.D. Va. 1992)...................................................32

C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship),
    113 F.3d 1304 (2d Cir. 1997)..............................................................15

In re Cardinal Indus., Inc.,
    116 B.R. 964 (Bankr. S.D. Ohio 1990)..................................................19

Center for Reprod. Law and Policy v. Bush,
    304 F.3d 183 (2d Cir. 2002)..........................................................27, 35

Coleman Oil Co., Inc. v. Circle K Corp. (In re Circle K Corp.),
    127 F.3d 904 (9th Cir. 1997) .............................................................34

Coltex Loop Cent. Three Partners, L.P. v. BT/SAP Pool C.
    Assocs., L.P. (In re Coltex Loop Cent. Three Partners, L.P.),
    138 F.3d 39 (2d Cir. 1998)...........................................................24-25,
    .......................................................................................26

In re Comm'n Options, Inc.,
    299 B.R. 479 (Bankr. S.D. Ohio 2003)..................................................17

Coogan v. Smyers,
    134 F.3d 479 (2d Cir. 1998)..............................................................36

Cooter & Gell v. Hartmarx Corp.,
    496 U.S. 384 (1990)........................................................................3

Daniels v. Certified Mortgage Corp. (In re Certified Mortgage Corp.),
19 B.R. 369 (Bankr. M.D. Fla. 1982) ....................................................23

Drehsen v. Bank of St. Petersburg (In re Drehsen),
190 B.R. 441 (M.D. Fla. 1995)..............................................................4

Drubner v. Gaslight Village, Inc. (In re Gaslight Village, Inc.),
8 B.R. 866 (Bankr. D. Conn. 1981) .................................................19, 23

In re East-West Associates,
106 B.R. 767 (S.D.N.Y. 1989)..............................................................20

Fed. Savings & Loan Ins. Corp. v. D & F Constr., Inc.
(In re D & F Constr., Inc.),
865 F.2d 673 (5th Cir. 1989) ...............................................................26

In re First Cent. Fin. Corp.,
377 F.3d 209 (2d Cir. 2004)..............................................................3, 22

Hudgins v. Sec. Bank of Whitesboro (In re Hudgins),
188 B.R. 938 (Bankr. E.D.Tex. 1995) ..................................................15

Int'l Asset Recovery Corp. v. Thomson McKinnon Sec. Inc.,
335 B.R. 520 (S.D.N.Y. 2005)..............................................................3

In re Island Helicopters,
211 B.R. 453 (Bankr. E.D.N.Y. 1997)..................................................17

In re Jamesway Corp.,
201 B.R. 73 (Bankr. S.D.N.Y. 1996)....................................................34

In re Jones,
1986 WL 31669 (Bankr. S.D.N.Y. May 28, 1986)................................21

In re Kaplan Breslaw Ash LLC,
264 B.R. 309 (Bankr. S.D.N.Y. 2001)..................................................15

MFS Sec. Corp. v. New York Stock Exch., Inc.,
277 F.3d 613 (2d Cir. 2002)..........................................................18, 27,
............................................................................................................35

Mazzeo v. Henhart (In re Mazzeo),
167 F.3d 139 (2d Cir. 1999).................................................................3

Montgomery County Maryland v. Metromedia Fiber Network, Inc.,
326 B.R. 483 (S.D.N.Y. 2005)............................................................3-4

In re Morgan Sangamon P'ship,
269 B.R. 652 (Bankr. N.D. Ill. 2001) ...................................................31

In re Mosello,
195 B.R. 277 (Bankr. S.D.N.Y. 1996)..................................................20

In re Nattel, LLC,
2007 WL 1489337 (D. Conn. May 18, 2007).......................................17

One Times Square Assocs. Ltd., P'ship v. Banque Nationale de Paris (In re One Times
        Square Assocs. Ltd. P'ship),
        165 B.R. 773 (S.D.N.Y. 1994)................................................................................24

In re Pegasus Agency, Inc.,
        101 F.3d 882 (2d Cir. 1996).................................................................................2

In re Pegasus Agency, Inc.,
        186 B.R. 597 (Bankr. S.D.N.Y. 1995)..................................................................20

Robb v. Schindler,
        142 B.R. 589 (D. Mass. 1992) .............................................................................34

In re Schick,
        235 B.R. 318 (Bankr. S.D.N.Y. 1999)..............................................................29-33

Sonnax Indus., Inc. v. Tri Component Products Corp.
        (In re Sonnax Indus., Inc.),
        907 F.2d 1280 (2d Cir. 1990)............................................................................3, 18

South Coast Plaza v. Standor Jewelers West, Inc.
        (In re Standor Jewelers W., Inc.),
        129 B.R. 200 (B.A.P. 9th Cir. 1991)....................................................................34

In re St. Casimir Development Corp.,
        358 B.R. 24 (S.D.N.Y. 2007)..........................................................................passim

Stumpf v. McGee (In re O'Connor),
        258 F.3d 392 (5th Cir. 2001) ...............................................................................31

In re Syndicom Corp.,
        268 B.R. 26 (Bankr. S.D.N.Y. 2001)....................................................................17

In re Tobago Bay Trading Co.,
        112 B.R. 463 (Bankr. N.D. Ga. 1990) .................................................................34

Tornheim v. Fed. Home Loan Mortgage Corp.,
        1996 WL 374178 (S.D.N.Y. July 1, 1996)...........................................................27

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,
        484 U.S. 365 (1988)........................................................................................22, 23

        ...............................................................................................................25

United States v. Mitchell,
        966 F.2d 92 (2d Cir. 1992)....................................................................................4

**DOCKETED CASES**

In re Delta Airlines, Inc.,
        Case No. 05-17923 (ASH) (Bankr. S.D.N.Y.).......................................................23

In re Northwest Airlines Inc.,
        Case No. 05-17930 (ALG) (Bankr. S.D.N.Y.) ......................................................23

In re St. Casimir Development Corp.,
        Case No. 06-05605 (CM) (S.D.N.Y.) ......................................................................4

## RULES AND STATUTES

11 U.S.C. § 101 ...............................................................................................................2, 4

11 U.S.C. § 105(a) ...............................................................................................................8

11 U.S.C. § 362(d) ..................................................................................................... passim

11 U.S.C. § 362(d)(1) ................................................................................................. passim

11 U.S.C. § 362(d)(2) ................................................................................................. passim

11 U.S.C. § 362(d)(2)(A) ...................................................................................................21

11 U.S.C. § 362(g) .......................................................................................................15, 21

11 U.S.C. § 365 ..................................................................................................................34

11 U.S.C. § 365(c) ...................................................................................................... passim

11 U.S.C. § 365(c)(1) ............................................................................................27, 30, 31

11 U.S.C. § 365(c)(1)(A) ...................................................................................................31

11 U.S.C. § 365(f) ..............................................................................................................34

11 U.S.C. § 365(f)(1) .........................................................................................................35

11 U.S.C. § 1129(a)(3) .......................................................................................................26

11 U.S.C. § 1129(a)(10) .....................................................................................................24

11 U.S.C. § 1129(b) ...........................................................................................................26

28 U.S.C. § 158.………...................................................................................................2

Fed. R. Bankr. P. 8013 .........................................................................................................3

Fed. R. Bankr. P. 7065 .........................................................................................................8

Fed. R. Bankr. P. 8016 .......................................................................................................11

Fed. R. Bankr. P. 8017 ..................................................................................................11, 37

Fed. R. Bankr. P. 8017(a) ............................................................................11

Fed. R. Bankr. P. 9006(a) ............................................................................37

Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119
    Stat. 23 ...........................................................................................4

### N.Y. PARTNERSHIP LAW § ___ (McKinney 2005)

§ 121-402(c) ................................................................................................28

§ 121-702(a) ................................................................................................29

§ 121-702(a)(2) ......................................................................................31-32

### OTHER AUTHORITIES

H.R. Rep. No. 595 at 343-44, <u>reprinted in</u> 1978 U.S.C.C.A.N. 6300...........................................15

3 Lawrence P. King, <u>Collier on Bankruptcy</u> ¶ 362.07[40[a] (15th rev. ed,
    2007)………………………………………………….. .........................................21

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT .....................................................................1

II.    STATEMENT OF JURISDICTION................................................................2

III.   STATEMENT OF ISSUES ...........................................................................2

IV.   STANDARD OF REVIEW ...........................................................................3

V.    STATEMENT OF THE FACTS AND THE CASE........................................4

      A.    Events Leading Up to the Petition Date.................................................4

      B.    Alliant's 2005 Motions ........................................................................8

      C.    Alliant's Cure of the Debtor's Defaults. ..............................................9

      D.    The Debtor's Appeals of the 2006 Orders. ..........................................10

      E.    The Second Removal Notice. ...............................................................10

      F.    The Post-Appeal Motions Before This Court. ......................................11

      G.   Alliant's Expedited Motion to Lift the Automatic Stay.........................13

VI.   ARGUMENT ..............................................................................................14

      A.    The Bankruptcy Court Did Not Abuse Its Discretion in Finding that Cause Exists to Lift the Automatic Stay. ...........................................................15

      B.    The Bankruptcy Court Did Not Abuse Its Discretion In Finding that the Debtor Has No Equity in the Partnership and the Debtor's Interest Is Not Necessary for an Effective Reorganization.............................................20

      C.    The Bankruptcy Court Did Not Err in Finding that There Could Be No Effective Reorganization of the Debtor. .................................................21

      D.    The Record Supports the Fact that the Debtor Has No Equity in the Partnership. ..........................................................................................27

            1.  This Court Never Considered Whether § 365(c) and the NYRLPA Would Prohibit Assignment of the Partnership Agreement .....................27

            2.  Section 365(c) of the Bankruptcy Code and New York Limited Partnership Law Preclude Assignment of the Partnership Agreement Without Alliant's Consent.......................................................29

            3.  The Debtor's Analogy to Lease Cases Invalidating Anti-Assignment Clauses Falls Flat ...............................................................34

            4.  There Is Substantial Evidence that the Debtor Lacks Equity in the Partnership Agreement.............................................................................35

      E.    The January 2007 Removal Letter Removed the Debtor When it Became Effective on February 26, 2007. .........................................................36

VII.  CONCLUSION............................................................................................38

I.    **PRELIMINARY STATEMENT**

Alliant Tax Credit XIV, Inc. and Alliant Tax Credit Fund XIV, Ltd. (together, "Alliant")

oppose the appeal taken by St. Casimir Development Corp. (the "Debtor") of the order (the

"2007 Stay Order") entered by the United States Bankruptcy Court for the Southern District of

New York (the "Bankruptcy Court").  The Bankruptcy Court's 2007 Stay Order, which was

entered seventeen months after the Debtor filed bankruptcy, granted Alliant full and

comprehensive relief from the automatic stay as necessary to enable it to complete the removal

of the Debtor as general partner of 11-23 St. Casimir Avenue, L.P. (the "Partnership") and

terminate the Debtor's interest in the Partnership.  The 2007 Stay Order permitted Alliant to

enforce its rights under the Partnership Agreement and protect itself from the Debtor's pre- and

post-petition breaches of the Partnership Agreement and its fiduciary duties.  The 2007 Stay

Order authorized Alliant to remove the Debtor as general partner of the Partnership

notwithstanding that this Court made a "hyper-technical" ruling in a prior appeal that Alliant

committed a service error in sending its pre-petition removal notice.  This Court described this

outcome as an "unfortunate result" in light of the Debtor's numerous breaches of the Partnership

Agreement.

The Debtor's appeal challenges some, but not all, of the findings the Bankruptcy Court

made in support of its entry of the 2007 Stay Order.  Notably, the Debtor does not contest the

Bankruptcy Court's finding that cause existed to grant relief from stay since the Debtor had acted

in bad faith in its bankruptcy proceeding and acted only to benefit its shareholders or insiders.

The Debtor challenged neither this factual finding nor the facts underlying this finding in its

statement of issues or in its brief.  Since bad faith conduct by the Debtor is a legally sufficient

grounds for relief, the 2007 Stay Order should be sustained on this basis alone.

The issues that the Debtor did raise on appeal do not justify a reversal of the 2007 Stay Order. The Debtor fails to establish that the Bankruptcy Court erred in finding that the Debtor lacked equity in the Partnership and that the Debtor could not be effectively reorganized within a reasonable time. Given that these findings of the Bankruptcy Court are not clearly erroneous and supported by ample and persuasive evidence, the 2007 Stay Order should be affirmed on this ground as well.

The 2007 Stay Order was not mooted by the law of the case that the Partnership Agreement was assumable under § 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") as the Debtor contends. Neither the District Court, nor the Bankruptcy Court in its previous rulings addressed, much less definitively ruled on this issue. In any event this issue is irrelevant to the 2007 Stay Order since, even if the Partnership Agreement was assumable by the Debtor, the Bankruptcy Court relied on altogether separate grounds to lift the stay and authorize Alliant to remove the Debtor as general partner of the Partnership.

Since the Debtor has failed to substantiate any of its arguments on appeal, the 2007 Stay Order should be affirmed in its entirety.

## II.  <u>STATEMENT OF JURISDICTION</u>

This Court has appellate jurisdiction over the 2007 Stay Order pursuant to 28 U.S.C. § 158, as it is a final order. In re Pegasus Agency, Inc., 101 F.3d 882, 885 (2d Cir. 1996) ("An order lifting the automatic stay is final and appealable.").

## III.  <u>STATEMENT OF ISSUES</u>

<u>Issue 1:</u> Whether the Bankruptcy Court abused its discretion in concluding that the automatic stay be should lifted pursuant to § 362(d)(1) for cause where the Debtor acted in

undisputed bad faith and Alliant's rights were impaired by the Debtor's defaults under the Partnership Agreement?

**Issue 2:** Whether the Bankruptcy Court abused its discretion in concluding that the Debtor had no equity in the Partnership and that the Debtor had no prospects for an effective reorganization within a reasonable time as required by § 362(d)(2)?

**Issue 3:** Whether the Bankruptcy Court erred in ruling that the Debtor could not assume and assign the Partnership Agreement when the District Court had not ruled on this issue in the prior appeal and the Debtor had presented no viable plan to cure its $1.5 million default more than a year after its bankruptcy proceeding commenced?

## IV.    STANDARD OF REVIEW

The Bankruptcy Court's decision to lift the automatic stay is reviewed for abuse of discretion.  See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990);  Mazzeo v. Henhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999) ("The bankruptcy court's decision on a motion to lift the automatic stay is reviewable only for an abuse of discretion.").  A court's ruling is an abuse of discretion if it is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

While questions of statutory interpretation are reviewed *de novo*, the Bankruptcy Court's findings of fact should be upheld unless clearly erroneous.  See In re First Cent. Fin. Corp., 377 F.3d 209, 211 (2d Cir. 2004); Int'l Asset Recovery Corp. v. Thomson McKinnon Sec. Inc., 335 B.R. 520, 525 (S.D.N.Y. 2005); Fed. R. Bankr. P. 8013.  "A finding is only clearly erroneous when 'although there is enough evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Montgomery

County Maryland v. Metromedia Fiber Network, Inc., 326 B.R. 483, 488 (S.D.N.Y. 2005) (quoting United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992)).  The Debtor has the burden of proving based on the record on appeal that the Bankruptcy Court's findings are clearly erroneous.  Drehsen v. Bank of St. Petersburg (In re Drehsen), 190 B.R. 441, 442 (M.D. Fla. 1995).

## V.    STATEMENT OF THE FACTS AND THE CASE[1]

### A.    Events Leading Up to the Petition Date.[2]

Prior to the bankruptcy, the Debtor was in Major Default (as defined by the Partnership Agreement) in its obligations as the general partner of the Partnership.  In re St. Casimir Dev. Corp., 358 B.R. 24, 28 (S.D.N.Y. 2007).  The Partnership was formed in 1998 for the purpose of investing in and providing low-income housing through the construction, renovation, rehabilitation, operation and leasing of a low-income senior housing in Yonkers, New York (the "Property").  Id.  To finance the acquisition, construction and development of the Property, the Partnership obtained a $9,697,400 mortgage loan (the "Mortgage") from Arbor National Commercial Mortgage, LLC ("Arbor"), secured by the Property and insured by the U.S.

---

[1]    The Debtor's Brief is cited as "App. Br."  Designated items included in the record are cited by reference to their Designation Number as follows: "[D-__]" for those items designated by Appellant and "[A-__]" for those items designated by Alliant.  Copies of the documents designated by the Debtor and by Alliant are being submitted to the Court simultaneously herewith.  References made herein to docket entries ("(Docket No.__)") are to the prior appeals docket before this Court, In re St. Casimir Dev. Corp., Case No. 06-05605 (CM) (S.D.N.Y.).  The Bankruptcy Code is cited by section, without the prefix "11 U.S.C."  Citations will be to the Code as it existed at the time of the filing of this bankruptcy case in September 2005, see 11 U.S.C. §§ 101 et seq., without regard to the recent amendments of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23, which are inapplicable to this case.

[2]    The Debtor's Brief includes an eight page litany of purported "facts" for which the Debtor improperly fails to cite to the record in this case, other than to mention in a footnote that all of such purported "facts" are contained somewhere in an affidavit.  App. Br. at 3 n.1.  Because the Debtor fails to properly support its version of the facts, this Court should find the facts, as set forth below, not in dispute.  Bambu Sales, Inc. v. Testini, 1989 WL 29990 at *1 n.1 (E.D.N.Y. March 21, 1989) (material facts not in dispute when Defendant failed to support its facts with competent evidence).

Department of Housing and Urban Development ("HUD").  Id.  Under the Partnership

Agreement, the Debtor was required to make the payments on the Mortgage to the extent

Partnership funds were insufficient.  Id. at 28-29.  As found by this Court and the Bankruptcy

Court, and undisputed by the Debtor, the Debtor was in Major Default under the Partnership

Agreement based on its failure to pay the Mortgage.  Id. at 30-31 (finding that by April 4, 2006,

the defaults caused by the Debtor "***had ballooned to approximately $560,000***"); Transcript of

Bankruptcy Court Hearing, April 4, 2006 ("Apr. 2006 Tr.") [A-18] at 52:23-53:2 (finding that

the mortgage default had grown from $269,295 to approximately $560,000 during the

bankruptcy) (emphasis added).  This default  was not cured, and indeed  worsened after the

Petition Date.  In re St. Casimir, 358 B.R. at 30-31.

The Partnership Agreement gives Alliant the power and discretion to remove the Debtor

as general partner upon the occurrence of a Major Default, subject to a fifteen-day cure period.

Id. at 29.[3]  By letters dated April 4, 2005 (the "First Default Notice") and April 14, 2005 (the

"Second Default Notice"), Alliant gave the requisite default notice and demand for cure within

fifteen days to the Debtor and the Guarantors.[4]  Id. at 31; Declaration of Brian Doran in Support

of Motion for Relief from the Automatic Stay, dated December 21, 2005 (the "Dec. 2005 Doran

Decl.") [A-2] ¶ 30 and Exs. J and K.  As found by this Court and the Bankruptcy Court, each of

these notices was properly served under the Partnership Agreement.  In re St. Casimir, 358 B.R.

at 36; Apr. 2006 Tr. [A-18] at 49:18-22, 53:6-9.

---

[3]     Specifically, this Court found that the Partnership Agreement required a three-step process in order for
Alliant to remove properly the Debtor as general partner: (i) a fifteen-day notice of default; (ii) a ten-day notice of
intent to remove; and (iii) a final notice of removal.  In re St. Casimir, 358 B.R. at 45.

[4]     Pursuant to a Guaranty Agreement dated as of March 26, 2001, Gary Flocco and Rodney James
Mondello, the sole shareholders and executive officers of the Debtor, and St. Casimir Development Company,
LLC (collectively the "Guarantors"), guaranteed certain material obligations of the Debtor under the Partnership
Agreement.  Dec. 2005 Doran Decl. [A-2] ¶ 8 and Ex. C.

Neither the Debtor, nor the Guarantors, cured these defaults. In re St. Casimir, 358 B.R. at 31. By letter dated April 25, 2005 (the "Notice of Removal"), Alliant notified the Debtor and the Guarantors that, pursuant to Section 11.4A of the Partnership Agreement, it was removing the Debtor as the general partner of the Partnership based upon the Major Defaults set forth in the First Default Notice and appointing a Successor General Partner. Id.; Apr. 2006 Tr. [A-18] at 50:12-25; Dec. 2005 Doran Decl. [A-2] ¶ 31 and Ex. L. This Court and the Bankruptcy Court found, and the Debtor also admits, that the Notice of Removal was properly served under the Partnership Agreement. In re St. Casimir, 358 B.R. at 32; April 2006 Tr. [A-18] at 50:12-25. As found by this Court, the fifteen-day cure period initiated by the First and Second Default Notices and the ten-day removal notice period initiated by the Notice of Removal all expired pre-petition. In re St. Casimir, 358 B.R. at 42 ("the Debtor's right to cure the defaults listed in the First and Second Default Notices expired April 19 and 29, 2005, respectively"); id. at 32, 37 ("the ten days elapsed on May 5, 2005," and Alliant's right to remove the Debtor as General Partner "fully ripened … after the ten day notice period expired on May 5, 2005"). Under this Court's ruling, Alliant completed two of the three steps necessary to remove the Debtor as general partner pre-petition and only the final notice of removal was necessary to complete the removal process under the Partnership Agreement. Id. at 45.

On May 4, 2005 (one day prior to the expiration of the ten-day removal period), in reliance on explicit representations by the Debtor that it would immediately pay all amounts due under the Mortgage, Alliant, by letter dated May 4, 2005, unilaterally agreed to defer the Debtor's removal so that the Debtor could bring the Mortgage current (the "Forbearance Letter"). Id. at 32. Specifically, Alliant agreed "to defer the date of Removal to such date as

specified by the delivery of a subsequent letter confirming such Removal."  Dec. 2005 Doran

Decl. [A-2] ¶ 33; see also Apr. 2006 Tr. [A-18] at 54:4-7.

As found by this Court, the Forbearance Letter expressly reserved all of Alliant's rights

and remedies afforded under the Partnership Agreement and under any and all related

agreements, and expressed by Alliant in the First Default Notice, the Second Default Notice and

the Notice of Removal.  In re St. Casimir, 358 B.R. at 37; see also Dec. 2005 Doran Decl. [A-2]

¶ 33 and Ex. M; Apr. 2006 Tr. [A-18] at 51:15-52:1-2.  This Court specifically found that the

Forbearance Letter was not intended to, and did not by its terms, constitute a withdrawal of the

Notice of Removal and "[did] not operate as a waiver of Alliant's rights to remove Debtor as

General Partner any time beginning May 6, 2005."  In re St. Casimir, 358 B.R. at 37.  This Court

also found that the Forbearance Letter did not stop the running of the ten-day period, which

expired on May 6, 2005.  Id. at 36, 37.

Alliant continued to forbear until September 16, 2005 based on the Debtor's repeated

assurances that it was in the process of obtaining additional funds and that the default would

soon be cured.  Dec. 2005 Doran Decl. [A-2] ¶ 38.  The Debtor did not live up to these

assurances.  In re St. Casimir, 358 B.R. at 32-33; Apr. 2006 Tr. [A-18] at 54:11-12 ("there was

no cure at all.  The debt simply grew and grew and grew…."); id. at 56:15-16.[5]

Alliant notified the Debtor and the Guarantors by letter dated September 16, 2005 that it

elected to remove the Debtor as general partner of the Partnership, effective immediately,

pursuant to Section 11.4A of the Partnership Agreement (the "Sept. 2005 Removal Letter").

---

[5]       The Debtor's defaults on the Mortgage could have had disastrous consequences to the Partnership.  As a
result of the Debtor's defaults, Arbor threatened to assign the Mortgage to HUD, and because the defaults were
more than ninety days in arrears, upon any such assignment, HUD's policy is to commence foreclosure
proceedings immediately upon assignment.  March 2006 Doran Decl. [A-14] ¶ 17.  Moreover, if the Mortgage
were foreclosed, "Alliant and its syndicate of investors would lose almost $9 million in tax credits and capital
contributions in cash of $5,886,000."  Id.

Dec. 2005 Doran Decl. [A-2] ¶ 38 and Ex. N.  Seven days after Alliant sent the Sept. 2005

Removal Letter, the Debtor commenced its bankruptcy case by filing a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.

### B.       Alliant's 2005 Motions.

On December 21, 2005, Alliant filed two motions with the Bankruptcy Court pursuant to

§§ 362(d)(1) and (2), 105(a) and Bankruptcy Rule 7065: one seeking relief from the automatic

stay in the bankruptcy case and one seeking injunctive relief in the related adversary proceeding

to implement Alliant's pre-petition removal of the Debtor as the general partner of the

Partnership (together, the "2005 Motions").  See 2005 Motions [D-2 and D-24].  The 2005

Motions sought relief from stay on each of the grounds specified in § 362(d): (i) for cause and

(ii) the Debtor's lack of equity in the Partnership and that the Debtor's interest in the Partnership

was not necessary for an effective reorganization.  See id.  Without deciding the other grounds

asserted by Alliant, the Bankruptcy Court granted Alliant's 2005 Motions on the ground that the

Partnership Agreement had terminated pre-petition and entered (i) the Amended Findings Of

Fact And Order Granting Relief From the Automatic Stay Pursuant To 11 U.S.C. § 362(d) And

Related Injunctive Relief Pursuant to 11 U.S.C. § 105(a) on June 6, 2006 [D-5] (the "2006 Stay

Relief Order"); and (ii) the Findings Of Fact, Conclusions Of Law And Order Granting

Injunctive Relief Pursuant To Bankruptcy Rule 7065 on April 11, 2006 [D-25] (the "Injunction

Order" and together with the 2006 Stay Relief Order, the "2006 Orders").

The 2006 Stay Relief Order granted Alliant, inter alia, "relief from the automatic stay and

related implementing injunctive relief, pursuant to 11 U.S.C. §§ 362(d) and 105(a), as necessary

to gain control of the Partnership assets and affairs effective as of the date of the order."  2006

Stay Relief Order [D-5] at 3.  To implement its stay relief, the Court entered an injunction in the adversary proceeding.  See Injunction Order [D-25] at 3-4.

### C.    Alliant's Cure of the Debtor's Defaults.

In reliance upon the 2006 Orders, Alliant assumed control of the Partnership and management of the Property.  Alliant made significant contributions in excess of $1.5 million to the Partnership and the Property, including, but not limited to, paying the Debtor's defaults under the Mortgage in excess of $810,000 and making certain other non-insider payments.  See January 2007 Declaration of Brian Doran in Support of Alliant Stay Relief Motion, dated January 23, 2007 (the "Jan. 2007 Doran Decl.") [D-8, Ex. B] ¶¶ 6-7; District Court Memorandum on Post-Appeal Motions, dated February 7, 2007 (Docket No. 30) (the "February 7 Judgment")[6] at 3 ("When Alliant took over management of the partnership assets, it cured the mortgage default (to the tune of $1.5 million) for the benefit of the partnership's creditors and the elderly residents of the project.  Moreover, Alliant contributed, rather than loaned, the money necessary to cure the mortgage default").  Further, Alliant cured the Debtor's regulatory defaults to HUD by filing seriously delinquent tax returns and audits that the Debtor had not completed.  Jan. 2007 Doran Decl. [D-8, Ex. B] ¶ 9.  Alliant also replenished $70,000 of security deposits for elderly tenants, which the Debtor had used for other purposes.  Id. ¶ 10.  Alliant also increased occupancy from 80% to 93%, completed the club house and exercise room and repainted the apartments of certain elderly residents.  Id. ¶ 8.

---

[6]        The February 7 Judgment is included with Alliant's Compendium of Prior Decisions submitted to this Court simultaneously herewith.

D.    **The Debtor's Appeals of the 2006 Orders.**

The Debtor appealed the 2006 Orders to this Court, but did not seek a stay pending appeal of the 2006 Orders. Following briefing and oral argument, on January 11, 2007, this Court issued its ruling in In re St. Casimir, 358 B.R. 24. This Court reversed the Bankruptcy Court's 2006 Orders, even though it recognized the "unfortunate result" of its "hyper-technical" ruling. Id. at 44. Specifically, this Court made two primary rulings: (i) the Sept. 2005 Removal Letter was not sent in strict compliance with the terms of the Partnership Agreement, and so failed to effect the Debtor's removal as general partner; and (ii) the Bankruptcy Court erred when it granted Alliant relief from the automatic stay in the 2006 Stay Relief Order on the ground that the Debtor's interest in the Partnership Agreement had terminated pre-petition. Id. at 41-42.

This Court also held that, because the Debtor was not properly removed as the general partner of the Partnership, the Partnership Agreement remained executory and as such potentially assumable by the Debtor. Id. at 44-45. This Court in no respect discussed or determined whether the Partnership Agreement was the type of contract that could be properly assumed and assigned under the Bankruptcy Code without Alliant's consent, as that issue was not before this Court on appeal. This Court held merely that Alliant's delivery of a final notice of removal (the third and final step of the removal process) would require an affirmative post-petition act, which could only be performed if the automatic stay was lifted by the Bankruptcy Court. Id. at 45.

E.    **The Second Removal Notice.**

On January 4, 2007, before this Court rendered judgment on the appeals, Alliant served a further notice on the Debtor and its counsel again removing it as the general partner of the Partnership in accordance with Section 15.4 of the Partnership Agreement (the "Jan. 2007

Removal Letter"). See Jan. 2007 Doran Decl. [D-8, Ex. B] ¶ 4. It did so to protect its interests

and those of the Partnership in the event that this Court was to rule that a further notice of

removal was necessary. On January 9, 2007, Alliant sent a clarifying letter to the Debtor and its

counsel stating that removal would be effective on January 16, 2007, the first business day after

the expiration of the ten-day notice period. Id. ¶ 5. The Jan. 2007 Removal Letter was sent

while the Bankruptcy Court's unstayed and final 2006 Stay Relief Order was still in effect  and

prior to this Court's issuance of In re St. Casimir, 358 B.R. 24. Thus, before this Court's opinion

was issued, Alliant completed the three-step removal process subsequently outlined in this

Court's opinion. Id. at 45. [7]

### F.    The Post-Appeal Motions Before This Court.

On January 16, 2007, the Debtor moved this Court for a ruling that its opinion applied

retroactively to the date of the filing of its notices of appeal of the 2006 Orders (the "2006

Notices of Appeal"). The Debtor alternatively sought a ruling that the automatic stay, which was

lifted by the Bankruptcy Court pursuant to the 2006 Stay Relief Order, would be deemed to have

been in effect from and after the date that the Debtor's 2006 Notices of Appeal was filed (the

"Retroactivity Motion").[8] This Court deferred any ruling on this issue to the Bankruptcy Court.

---

[7]    Pursuant to the Stay Stipulation (hereinafter defined), Alliant and the Debtor agreed to toll the
effectiveness of the Jan. 2007 Removal Letter until a mutually agreeable date or the later of (i) five business days
after this Court's judgment in In re St. Casimir was formally docketed pursuant to Bankruptcy Rule 8016 or (ii)
February 26, 2007. Stipulation and Order Staying District Court Order Pursuant to Fed. R. Bankr. P. 8017
(Docket No. 25) (the "Stay Stipulation") ¶ 2. As the parties did not otherwise agree to another date and this
Court's judgment was docketed in January (although stayed by stipulation of the parties until February 7, 2007),
on February 26, 2007, the ten-day removal period expired finally effecting the removal of the Debtor as the
general partner.

[8]    The Retroactivity Motion was not filed on this Court's docket and is not part of the record below, but for
the Court's convenience, is included in the Documents Included in Appellee's Counter Designation of the Record
[Tab 25] submitted to the Court simultaneously herewith.

February 7 Judgment at 2 ("Arguments about the 'retroactivity' of the January 11 ruling are properly made in the context of [an application to the Bankruptcy Court].").

On January 23, 2007, Alliant moved this Court for a stay pending appeal of this Court's ruling in In re St. Casimir.  See Alliant's Emergency Motion for Stay Pending Appeal to the Court of Appeals Pursuant to Fed. R. Bankr. P. 8017, dated January 23, 2007 (Docket No. 24) (the "Stay Motion").  On January 24, 2007, Alliant and the Debtor agreed to stay the running of the ten-day period imposed by Bankruptcy Rule 8017(a) (and thus the effectiveness of this Court's judgment in In re St. Casimir) until a date after this Court ruled on Alliant's Stay Motion and the Debtor's Retroactivity Motion.  See Stay Stipulation.

On February 7, 2007, this Court issued the February 7 Judgment.  In the February 7 Judgment, this Court found that while it believed that Alliant's likelihood of success with respect to an appeal of its ruling in In re St. Casimir is low, other factors militate in favor of a stay pending appeal.  See February 7 Judgment at 4.  Specifically, this Court held that the interests of Alliant (who, in reliance on the 2006 Court Orders, cured the Debtor's defaults under the Partnership Agreement and the Mortgage "which it had no contractual obligation to make – without the slightest prospect that Debtor, will be able to make good its loss if this court's decision is overturned") and the public are best served by preserving the status quo until the issues are finally resolved.  Id.  Thus, this Court granted the stay requested by the Stay Motion, subject to Alliant posting a $25,000 bond and its agreement to accompany its notice of appeal to the Second Circuit with a motion for an expedited appeal.[9]

---

[9]          On February 8, 2007, this Court entered its Order Staying District Court Order Pursuant to Fed. R. Bankr. P. 8017 (the "District Court Stay Order") staying this Court's judgment until ten days after the entry of an order by the Second Circuit on Alliant's appeal of In re St. Casimir, 358 B.R. 24.  On February 15, 2007, Alliant posted a $25,000 bond with this Court.  See Notice of Posting of Bond Pending Appeal (Docket No. 36).  On February 16, 2007, Alliant filed its Notice of Appeal (Docket No. 34).  Alliant also filed a motion to expedite its appeal of this Court's judgment in In re St. Casimir in the Second Circuit, but the parties later stipulated to hold

*(Footnote continued)*

### G.    <u>Alliant's Expedited Motion to Lift the Automatic Stay.</u>

On January 23, 2007, Alliant filed its Emergency Motion to Annul or Terminate the Automatic Stay and For an Injunction and Related Relief with the Bankruptcy Court (the "<u>2007 Stay Relief Motion</u>") seeking relief from the automatic stay prospectively and retroactively. 2007 Stay Relief Motion [D-8].  At the hearing on the 2007 Stay Relief Motion, the Bankruptcy Court focused only on whether relief from the automatic stay should be granted prospectively. <u>See</u> Transcript of February 15, 2007 Hearing (the "<u>2007 Tr.</u>") [D-21] at 50:4-8 ("I'm going to treat it solely as a motion now to lift the stay prospectively to permit Alliant to serve a notice of removal ….").  The Bankruptcy Court found that grounds existed under §§ 362(d)(1) and (d)(2) to lift the automatic stay to permit Alliant to remove the Debtor as the general partner of the Partnership and on February 28, 2007 entered the Findings of Fact and Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) [D-22] (the "<u>2007 Stay Order</u>"). Specifically, the Bankruptcy Court found in the 2007 Stay Order that:

- "The Debtor misappropriated approximately $70,526 in security deposits posted by tenants of the Partnership's senior housing facility;"

- "The Debtor's Major Defaults under the Partnership Agreement have caused great prejudice to Alliant by jeopardizing its investment in the Partnership and its tax credits;"

- "The Debtor's breaches of fiduciary duty and payment of insiders with funds that could and should have been used to pay the Partnership's Mortgage, during this Bankruptcy Case represented bad faith conduct in regards to its responsibilities as a debtor and as general partner;"

- "Alliant, who has cured the Debtor's defaults under the Partnership Agreement, including payment of the Mortgage default, and improved the Partnership's senior housing facility at its own expense, should not be further prejudiced by continuance of the automatic stay at this time;"

---

such appeal in abeyance until the parties have an opportunity to appeal any outcome of this current appeal in order to combine the appeals.

- "Continuance of the automatic stay would only benefit the Debtor and its insiders as the Debtor has no creditors other than Alliant and continuance of the automatic stay is thus not a proper use of Bankruptcy Code provisions;"

- "The Debtor's breaches of the Partnership Agreement presents a two party dispute not appropriate for resolution by a plan [of] reorganization pursuant to 11 U.S.C. § 1129;"

- "The Debtor's opposition to Alliant's claims of default under the Partnership Agreement made to this Court were baseless and frivolous;"

- "The New York Revised Limited Partner Act precludes Alliant from being forced to accept an alternate general partner without its consent, and thus 11 U.S.C. § 365(c)(1) would preclude the Debtor from assuming and assigning the Partnership Agreement;" and

- "The Debtor's prospects for an effective reorganization through a plan to cure its defaults under the Partnership Agreement are extremely dubious."

Based on the foregoing findings, the Bankruptcy Court granted Alliant relief from the automatic stay to "issue any additional notices required, and to take any other action necessary, to remove the Debtor as general partner of the Partnership." 2007 Stay Order [D-22] at 3. This appeal followed.

## VI.    **ARGUMENT**

The Debtor does not assert that the Bankruptcy Court failed to support the 2007 Stay Order findings with sufficient evidence. It also does not assert that these findings do not constitute legally sufficient grounds for the Bankruptcy Court's grant of relief from stay. Instead, the Debtor merely makes the broad unsupported statement that the Bankruptcy Court "erroneously focused on the commercial harm to Alliant by the Debtor's pre-petition conduct and the delay occasioned by Alliant's own motion practice." App. Br. at 33. The Debtor fails to support this argument with anything in the factual record or any case law holding that its own bad faith and the evidentiary-supported harm to Alliant are insufficient to support the relief granted. Given the Debtor's failure to challenge effectively the Bankruptcy Court's uncontested

findings and clear and appropriate grounds for lifting the stay under applicable case law, this Court cannot find that the Bankruptcy Court abused its discretion in granting stay relief and the 2007 Stay Order should be affirmed.

### A.    The Bankruptcy Court Did Not Abuse Its Discretion in Finding that Cause Exists to Lift the Automatic Stay.

Section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay … for cause, including the lack of adequate protection of an interest in property of such party in interest."[10]  Neither the Bankruptcy Code nor the legislative history defines the term "cause," but it is clear that "the facts of each request [to lift stay] will determine whether relief is appropriate under the circumstances."  H.R. REP. NO. 595 at 343-44, reprinted in 1978 U.S.C.C.A.N. 6300.  "Cause" for relief from stay may be found based on unenumerated factors, including bad faith (see C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1313 (2d Cir. 1997)), or failure to deal with creditors fairly even where bad faith is not found (see In re Kaplan Breslaw Ash LLC, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) (in determining whether "cause" exists, court "considers it appropriate to focus on whether Debtor and its principals have played by the rules; have met their obligations under the Bankruptcy Code; and have 'done equity' when invoking the equitable protections the Bankruptcy Code provides")).  "Cause" is not limited to those situations where a party lacks adequate protection, but can encompass many different situations.  See Hudgins v. Sec. Bank of Whitesboro (In re Hudgins), 188 B.R. 938, 946 (Bankr. E.D. Tex.

---

[10]    Once a movant makes the initial showing of "cause" to lift the stay, the burden of proof is on the debtor to show that it is entitled to continuation of the stay.  See § 362(g) (party opposing relief from stay has the burden of proof on all issues other than the debtor's equity in the property); see also In re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997) ("the automatic stay is intended only to shift the initiative to the creditor to bring the issue before the Bankruptcy Court, and not to create any new right in the debtor to stay proceedings" and "if a creditor seeking relief from the stay has made a prima facie case of 'cause' for lifting the stay, the burden of going forward shifts to the debtor").

1995); Albany Partners, Ltd. v. W.P. Westbrook, Jr. (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984) (in determining "bad faith," court must consider any factors that evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors that evidence that the petition was filed "to delay or frustrate the legitimate efforts of … creditors to enforce their rights.").

Most of the Bankruptcy Court's findings of fact, which are not challenged by the Debtor on appeal, collectively and persuasively establish bad faith: (i) the "Debtor misappropriated approximately $70,526 in security deposits posted by the tenants" (see 2007 Stay Order [D-22] at 2 ¶(a); see also 2007 Tr. [D-21] at 53:15-17); (ii) the "Debtor's breaches of fiduciary duty and payment of insiders with funds that could and should have been used to pay the Partnership's Mortgage … represented bad faith conduct in regards to its responsibilities as a debtor" (see 2007 Stay Order [D-22] at 2 ¶(c); 2007 Tr. [D-21] at 53:8-14; Supplemental Declaration of Brian Doran, dated March 31, 2006 [A-14] (the "March 2006 Doran Decl.") ¶¶ 6-7);[11] (iii) "good cause for relief from the stay was and remains this debtor's basically egregious default in failure to carry out its obligations, which threatened the viability of" the Partnership (see 2007 Tr. [D-21] at 52:22-25); (iv) "[c]ontinuance of the automatic stay would only benefit the Debtor and its insiders as the Debtor has no creditors other than Alliant and continuance of the automatic stay is thus not a proper use of Bankruptcy Code provisions" (2007 Stay Order [D-22] at 2 ¶(e)); (v) "[t]he Debtor's opposition to Alliant's claims of default under the Partnership Agreement made to this Court were baseless and frivolous" (see 2007 Stay Order [D-22] at 2 ¶(g); 2007 Tr. [D-21] at 53:18-21); and (vi) "[t]he Debtor's breaches of the Partnership Agreement presents a two party

---

[11]     The Bankruptcy Court acknowledged that the Debtor's bankruptcy merely serves the interests of its insiders.  2007 Tr. [D-21] at 54:5-8 ("the only interests designed to be served are the interests of the insiders of the debtor").

dispute not appropriate for resolution by a plan [of] reorganization pursuant to 11 U.S.C. § 1129." (see 2007 Stay Order [D-22] at 2 ¶(f); see also 2007 Tr. [D-21] at 52:22-25).  The Bankruptcy Court, which had presided over extensive proceedings and had observed the Debtor's conduct in the case for eighteen months, emphasized that its primary reason  to "lift the stay is that ***this debtor has engaged in manifestly bad faith conduct.***"  2007 Tr. [D-21] at 53:1-2 (emphasis added).

These egregious actions of the Debtor and the Bankruptcy Court's findings in connection therewith are so manifestly conclusive of the fact that the Debtor engaged in "bad faith" conduct that the Debtor fails to challenge this conclusion on appeal.  Substantial authority holds these facts establish the requisite "cause" to lift the stay in this case.  See In re Syndicom Corp., 268 B.R. 26, 52 (Bankr. S.D.N.Y. 2001) (invocation of the Bankruptcy Court's jurisdiction as a vehicle for protecting the rights of insiders for their private financial advantage in a two-party dispute with no other creditors is bad faith); In re Island Helicopters, 211 B.R. 453, 462 (Bankr. E.D.N.Y. 1997) (filing to delay and frustrate termination of partnership interest which had eroded to nothingness was in bad faith); In re 652 W. 160th L.L.C., 330 B.R. 455, 467 (Bankr. S.D.N.Y. 2005) (a debtor's misconduct or omissions in the administration of the bankruptcy case constitutes a lack of good faith and cause to lift stay); In re Comm'n Options, Inc., 299 B.R. 479, 480 (Bankr. S.D. Ohio 2003) (finding justification to lift stay for cause where evidence "showed that [the] debtor is using the bankruptcy reorganization remedy, not to try to repay its creditors, but to protect the prerogatives of its insiders").

The Bankruptcy Court's finding of "bad faith" can only be overturned by this Court if such finding was clearly erroneous.  In re Nattel, LLC, 2007 WL 1489337 at * 1, slip op. (D. Conn. May 18, 2007) (citations omitted) ("a bankruptcy court's factual determination on the

issue of bad faith is reviewed under the clearly erroneous standard").  Since this finding of bad faith is uncontested by the Debtor, and also amply supported and substantiated by the record, it cannot be found to be clearly erroneous.  In re Albany Partners, 749 F.2d at 673 (appellate court need not consider whether relief was justified under one subsection of § 362(d), where lower court found that party was entitled to stay relief under other subsection of § 362(d));  MFS Sec. Corp. v. New York Stock Exch., Inc., 277 F.3d 613, 617 (2d Cir. 2002) ("The reviewing court may, of course, affirm on any ground appearing in the record below").

Notwithstanding the independent sufficiency of the bad faith findings to justify relief from the automatic say, the Bankruptcy Court did not abuse its discretion in finding that the impact of the stay on the parties and the balance of the harms favored granting relief from the stay for cause as well.  Sonnax Indus., Inc. v. Tric Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,1286 (2d 1990) (finding that impact of stay on the parties and balance of the harms as factors relevant to whether to grant stay relief).  The Bankruptcy Court found that harm to Alliant's interests separately justified relief from the stay:  (i) the "Debtor's Major Defaults under the Partnership Agreement have caused great prejudice to Alliant by jeopardizing its investment in the Partnership" (see 2007 Stay Order [D-22] at 2 ¶(b)); (ii) Alliant has cured the Debtor's defaults under the Partnership Agreement, including payment of the Mortgage default and should not be further prejudiced by continuance of the automatic stay (see 2007 Stay Order [D-22] at 2 ¶(d); 2007 Tr. [D-21] at 55:7-12); (iii) continuance of the automatic stay would only benefit the Debtor and its insiders because the Debtor has no other creditors (see 2007 Stay Order [D-22] at 2 ¶(e); 2007 Tr. [D-21] at 54:2-4); and (iv) "[e]very consideration of equity and fairness lies with Alliant in terms of its right to terminate this debtor and to assume the role of general partner" (see 2007 Tr. [D-21] at 55:16-18).  The Debtor does not challenge these

18

findings, which support the fact that the balance of the harms rest with Alliant, nor does it challenge that the automatic stay is not simply for the benefit of the Debtor, and (ironically) asserts that it is also designed to protect creditors.  App. Br. at 33 (citing In re Cardinal Indus., Inc., 116 B.R. 964, 982 (Bankr. S.D. Ohio 1990) for the proposition that a creditor can seek to have the stay lifted where the creditor is harmed by the stay); see also Drubner v. Village, Inc. (In re Gaslight Village, Inc.), 8 B.R. 866, 870 (Bankr. D. Conn. 1981) (automatic stay "not intended to be used as a weapon or club to reduce secured creditors into submission with the continued passage of time …").

Here, Alliant is the Debtor's only creditor (see 2007 Tr. [D-21] at 53:22-54:4) and the Debtor does not and cannot challenge the harm the Bankruptcy Court found that Alliant would suffer if the stay had not been lifted and Alliant's management of the Partnership was not maintained.  The record is clear that Alliant would suffer the permanent consequences of contributing, rather than loaning, approximately $1.5 million to cure the Debtor's defaults of the Partnership Agreement for the benefit of the Partnership's creditors and elderly residents.  See February 7 Judgment at 3; Jan. 2007 Doran Decl. [D-8, Ex. B] ¶ 11.   To restore the Debtor to its general partner rights would risk Alliant's $9 million original investment (see 2005 Doran Decl. [A-2] ¶ 11), plus its new $1.5 million investment (see Jan. 2007 Doran Decl. [D-8, Ex. B] ¶ 7). If the Debtor's mismanagement of the Partnership again harmed the Partnership's relationships with HUD and Arbor, the mortgage lender, Alliant could lose all of its investment and the tax credits ($8,991,081) could be retroactively cancelled.  March 2006 Doran Decl. [A-14] ¶¶ 17-20. Foreclosure, which would result in the complete loss of Alliant's investment and retroactive cancellation of the tax credits, is sufficient to establish irreparable harm.  Id.  Given this

undisputed harm that Alliant would suffer had the automatic stay not been lifted, the Bankruptcy

Court cannot be said to have abused its discretion in lifting the stay for cause.

> **B.    The Bankruptcy Court Did Not Abuse Its Discretion in Finding that the Debtor Has No Equity in the Partnership and the Debtor's Interest Is Not Necessary for an Effective Reorganization.**

Ignoring that the § 362(d)(1) ground alone requires the affirmation of the Stay Relief

Order, the Debtor devotes much of its brief to its claim that it can reorganize itself by assuming

and assigning the Partnership Agreement.  App. Br. at 12-32.  However, the Debtor's arguments

on appeal (although not explicitly stated so) are tantamount to a claim that the Bankruptcy Court

abused its discretion in finding that the stay should be lifted pursuant to § 362(d)(2), because the

Debtor lacked equity in the Partnership and its prospects for any effective reorganization were

"dubious."  Thus, we address the Debtor's arguments regarding assignment of the Partnership

Agreement here and in that context show why the Bankruptcy Court did not abuse its discretion

in lifting the stay pursuant to § 362(d)(2).

Section 362(d)(2) provides an alternative ground for relief from stay other than the

existence of "cause."  Section 362(d)(2) is separated from § 362(d)(1) by the disjunctive word

"or" and provides an alternative test.  See In re East-West Assocs., 106 B.R. 767, 774 (S.D.N.Y.

1989) (§ 362(d)(1) written in disjunctive with § 362(d)(2)).  Section 362(d)(2) provides that "the

court shall grant relief from stay … with respect to a stay of an act against property under

subsection (a) … if (A) the debtor does not have an equity in such property; and (B) such

property is not necessary to an effective reorganization."  See In re Pegasus Agency, Inc., 186

B.R. 597, 603 (Bankr. S.D.N.Y. 1995) ("the motion to lift the stay must be granted" where

debtor had no equity in property and failed to establish that property was necessary to an

effective reorganization), aff'd, 101 F.3d 882 (2d Cir. 1996); In re Mosello, 195 B.R. 277, 293-

94 (Bankr. S.D.N.Y. 1996) (granting motion to lift stay where debtors have no equity in subject

property and there was no possibility of reorganization absent post-petition financing). The Debtor, not Alliant, bore the burden of proof on the issue of whether an effective reorganization was in prospect and Alliant bore the burden of proof on the issue of equity.[12]

The Bankruptcy Court made findings that pertain to both of these elements of § 362(d)(2). It found that "[t]he Debtor's prospects for an effective reorganization through a plan to cure its defaults under the Partnership Agreement are extremely dubious." 2007 Stay Order [D-22] at 3 ¶(i). While not specifically finding the Debtor had no equity, the Bankruptcy Court found "[t]he New York Revised Limited Partner Act precludes Alliant from being forced to accept an alternate general partner without its consent, and thus 11 U.S.C. § 365(c)(1) would preclude the Debtor from assuming and assigning the Partnership Agreement." Id. at 2 ¶(h).[13] Given that absent assumption, the Debtor could derive no benefit from the Partnership Agreement, it is undisputable that the Debtor had no equity in the asset it sought to protect by the automatic stay.

### C. The Bankruptcy Court Did Not Err in Finding that There Could Be No Effective Reorganization of the Debtor.

The Supreme Court in Timbers of Inwood defined what it means to be "necessary to an effective reorganization" in the context of § 362(d)(2) as follows:

---

[12]     See § 362(g) (party opposing relief from stay has burden on all issues other than equity in the property).

[13]     "Equity" is a term of art in bankruptcy that, in the context of § 362(d)(2)(A), generally refers to the amount by which the value of a secured creditor's collateral exceeds such creditor's liens on such property. See 3 Lawrence P. King, Collier on Bankruptcy ¶ 362.07[4][a] (15th rev. ed. 2007). Because, in the case at bar, Alliant is not a secured creditor, the Bankruptcy Court did not make a specific finding of lack of equity in the traditional sense, but rather (as explained further below) found that the Debtor could not assign its rights in the Partnership Agreement pursuant to § 365(c) and that any assumption of the Partnership Agreement was merely subject to Alliant's ability to remove the Debtor, essentially making any purported ability to assume the Partnership Agreement and extract value from the Debtor's interest (if any) a nullity. See In re Jones, 1986 WL 31669 (Bankr. S.D.N.Y. May 28, 1986) (in motion to lift stay filed by landlord to evict tenant, court finding that while § 362(d)(2)(A) "may be an inappropriate standard for the determination" of any equity that "courts may be influenced by the existing legal or equitable interest" the debtor may have).

21

> [N]ot merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization ***that is in prospect***. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." 808 F.2d, at 370-71, and nn.12-13, and cases cited therein. The cases are numerous in which § 362(d)(2) relief has been provided ***within less than a year*** from the filing of the bankruptcy petition. And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, see 11 U.S.C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.

United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-376 (1988) (emphasis added). The Debtor's conduct in this case led the Bankruptcy Court to find something far short of the Debtor having even "a reasonable possibility of a successful reorganization," but rather found that "the Debtor's prospects for an effective reorganization through a plan … are extremely dubious." 2007 Stay Order [D-22] at 3 ¶(i); 2007 Tr. [D-21] at 55:20-23. The Bankruptcy Court also found that "the Debtor has no creditors other than Alliant" and that the "Debtor's breaches of the Partnership Agreement presents a two party dispute not appropriate for resolution by a plan [of] reorganization pursuant to 11 U.S.C. § 1129." 2007 Stay Order [D-22] at 2 ¶¶(e), (f). These findings must be upheld by this Court unless clearly erroneous. In re First Cent. Fin. Corp., 377 F.3d. 209, 311 (2d Cir. 2004).

The evidence in the record is undisputed that the Debtor has taken refuge in bankruptcy for nearly twenty-one months without having any prospects of curing its defaults under the Mortgage and the Partnership Agreement. See 2007 Tr. [D-21] at 52:16-21 ("During that period of time from September [2005] to April [2006], this debtor, faced with being in the bankruptcy court and faced with losing on the motion to lift the stay still could not, or did not, provide any relief, did not come up with the funding to cure its default and assume the agreement. It just didn't happen."). This is far longer than the period the Timbers case suggests is the proper time

22

frame to wait.  Timbers, 484 U.S. at 375.[14]  Much larger recent chapter 11 proceedings with far

greater complexities than the case at bar have been filed and their plans have been confirmed in a

shorter time than this Debtor has floundered in bankruptcy.  See In re Northwest Airlines Inc.,

Case No. 05-17930 (ALG) (Bankr. S.D.N.Y.) (petition filed on September 14, 2005 and plan

confirmed on May 18, 2007); In re Delta Air Lines, Inc., Case No. 05-17923 (ASH) (Bankr.

S.D.N.Y.) (petition filed on September 14, 2005 and plan confirmed on April 25, 2007); see also

In re Gaslight Village, Inc., 8 B.R. at 870 ("The automatic stay was not intended to be a

permanent refuge for a financially distressed debtor."); Daniels v. Certified Mortgage Corp. (In

re Certified Mortgage Corp.), 19 B.R. 369, 370-71 (Bankr. M.D. Fla. 1982) ("The proposition

that the Debtor may use the automatic stay indefinitely as a refuge without proceeding speedily

to a confirmation is simply not the law.").

　　　　There is no evidence in the record that the Debtor could, within a reasonable time, pull a

rabbit out of its hat and present a confirmable plan.  The Debtor's superficial and self-serving

allusions to having found a party to finance a plan are belied by the record itself.  Even the

proposed cure through a sale of the Debtor's partnership interest that the Debtor suggests in its

brief (App. Br. at 19-21) was merely an indefinite proposal.  Id. at 20 ("It's true we [Debtor and

its "purported" purchaser] don't have a formal proposal ….").  Indeed, the Bankruptcy Court

stated that:

> This debtor has had ample time to find an investor or a lender, or some source of
> financing, even if you exclude the period of time from the defective notice of
> removal.  The debtor had ample time in bankruptcy before I lifted the stay to find

---

[14]　　　　Any argument by the Debtor that its purported Amended Plan of Reorganization and corresponding
Disclosure Statement, each dated March 7, 2006 [A-9, A-10], represent a credible attempt to move its case toward
confirmation fails.  The Plan and Disclosure Statement are extremely stale and do not deal with any of the issues
in this pending litigation, nor do they discuss how the Debtor intends to implement the Plan through the cure of
any of the enormous defaults under the Partnership Agreement.  For the reasons set forth below, the Plan and any
other derivation of the Plan are, in any event, wholly unconfirmable.

alternate financing.  The debtor had ample time prior to the final notice of removal to find financing.

**Even now, the debtor has made no demonstration of any likelihood, any realistic likelihood of finding financing.**

2007 Tr. [D-21] at 55:24-56:7 (emphasis added); id. at 16:21-22 (finding that the Debtor's financing proposals are "still a figment of somebody's imagination, so far as the court is concerned").

Even if there was evidence of feasible financing in the record, because Alliant is currently the Debtor's only creditor, its dissent would make confirmation of any successful plan impossible.  See 2007 Tr. [D-21] at 54:3-4 ("There are no creditors other than Alliant."). Accordingly, the Debtor would never be able to satisfy the requirement of § 1129(a)(10) (which requires that in order to confirm a plan, at least one class of non-insider impaired creditors vote in favor of the plan), since there would be no non-insider impaired creditor voting in favor of the plan.  See One Times Square Assocs. Ltd. P'ship v. Banque Nationale de Paris (In re One Times Square Assocs. Ltd. P'ship), 165 B.R. 773, 776 (S.D.N.Y. 1994) (§ 1129(a)(10) "requires that at last one impaired class of claims accept a plan before the other classes can be forced to accept it") (citations omitted).  Alliant has no desire to give the Debtor another opportunity to breach its fiduciary duties after Alliant paid the outstanding debts of the Partnership, which comprised all, or substantially all, of the claims against the Debtor.   See Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship), 21 F.3d 477, 483 (2d Cir. 1994) ("Chapter 11 is far better served by allowing those creditors with the largest unsecured claims to have a significant degree of input and participation in the reorganization process, since they stand to gain or lose the most from the reorganization of the debtor."); id. (holding that single asset debtor should not be able to cramdown a plan that is designed to disadvantage its overwhelmingly largest creditor); see also

24

Coltex Loop Cent. Three Partners, L.P. v. BT/SAP Pool C. Assocs., L.P. (In re Coltex Loop

Cent. Three Partners, L.P.), 138 F.3d 39 (2d Cir. 1998) (holding that the plan was not fair and

equitable, and thus not confirmable, because it allowed debtor's partners to retain their equity

although the partners were junior to the unsecured creditor class, and the unsecured creditors

class was paid only ten percent of their claims under the plan).

 While the Debtor claims that the Bankruptcy Court never provided the Debtor with an

opportunity to develop an economic plan, which presumably would include assumption of the

Partnership Agreement, Timbers requires a realistic prospect of effective reorganization within a

reasonable time. Timbers, 484 U.S. at 375-76; App. Br. at 35. Here the Debtor had been in

bankruptcy for nearly a year and a half at the time the Bankruptcy Court entered the 2007 Stay

Order with no such plan forthcoming. The Debtor complains that the Bankruptcy Court refused

to receive argument or testimony from the Debtor's proposed assignee (App. Br. at 19). There is

nothing in the record (because nothing exists), however, showing that the Debtor, or its proposed

assignee, was prepared to offer such testimony and was denied. The Debtor merely had

identified a party that *might* be interested in investing in the Partnership, but who stated on the

record that it was not presently prepared to make an offer. See 2007 Tr. [D-21] at 16:21-22

(court finding that the Debtor's financing proposals are "still a figment of somebody's

imagination, so far as the court is concerned"); see also id. at 18:3-17 (Debtor's proposed

assignee's counsel stating that it would need two weeks in order to conduct diligence and review

documents in order to make a determination if it was even interested in taking assignment of

Debtor's rights under the Partnership Agreement). The record does not, as the Debtor contends,

suggest an abuse of discretion on the part of the Bankruptcy Court, as it specifically noted that:

"The debtor had ample time in bankruptcy before I lifted the stay to find alternate financing. The

25

debtor had ample time prior to the final notice of removal to find financing.  Even now, the

debtor has made no demonstration of any likelihood, any realistic likelihood of finding

financing."  Id. at 56:1-56:7.

   The Debtor's inability to secure either financing or an impaired consenting non-insider

class of creditors are not the only insurmountable obstacles to confirming a plan and thus, an

effective reorganization. The Debtor also cannot establish that its plan is "fair and equitable."

No plan can be "fair and equitable" where the Bankruptcy Court has already found "the only

interests designed to be served are the interests of the insiders of the debtor."  2007 Tr. [D-21] at

54:5-8; see also 2007 Tr. [D-21] at 13:20-14:5 (counsel for Debtor acknowledging that after

Alliant, the only parties to "benefit" from a plan will be the shareholders or insiders); In re

Coltex, 138 F.3d at 46 ("insider's plan for the benefit of insiders" does not meet § 1129(b)'s fair

and equitable standard); Fed. Savings & Loan Ins. Corp. v. D & F Constr., Inc. (In re D & F

Constr., Inc.), 865 F.2d 673, 675 (5th Cir. 1989) ("fair and equitable" requirement extends

beyond technical requirements of absolute priority rule).  Alliant has already paid all of the

Debtor's creditors and restored the Partnership through its own investment (February 7 Judgment

at 3), and any remaining proceeds would therefore solely benefit the Debtor and its shareholders.

2007 Tr. [D-21] at 54:5-8; 2007; Stay Order [D-22] at 2 ¶(e).  A plan providing a benefit only to

a debtor's insiders is not confirmable.  In re Coltex, 138 F.3d at 46 (rejecting plan because it

"was an insider's plan for the benefit of insiders.  It was of little benefit to any creditor, and the

major creditor was stymied in its legitimate attempts to obtain the value of its claims.").  Finally,

given the Bankruptcy Court's findings of bad faith, it is highly unlikely it would reverse its

position and find that any plan proposed by the Debtor could satisfy the good faith requirement

under § 1129(a)(3).  See supra at 13-14, 16-18.

**D.     The Record Supports the Fact that the Debtor Has No Equity in the Partnership.**

Appellant devotes much of its brief to claiming Bankruptcy Court error when it found that the New York Revised Limited Partnership Act ("NYRLPA") precluded Alliant from being forced to accept an alternate general partner without its consent pursuant to § 365(c)(1).  See 2007 Stay Order [D-22] at 2 ¶(h); App. Br., Point II at 21-32.  Even if the Debtor's challenge to this finding is correct (which it is not, as further explained below), this issue need not be addressed on appeal since the Bankruptcy Court's ruling on the separate independent ground of "cause" to lift stay requires that the 2007 Stay Order be upheld.  See, e.g., MFS Sec. Corp., 277 F.3d at 617; Center for Reprod. Law and Policy v. Bush,  304 F.3d 183, 189 (2d Cir. 2002).

**1.     This Court Never Considered Whether § 365(c) and the NYRLPA Would Prohibit Assignment of the Partnership Agreement.**

The Debtor erroneously relies upon the doctrine of "law of the case" to argue that the Bankruptcy Court was precluded from holding the Partnership Agreement was not assumable. App. Br. at 14-15; see Tornheim v. Fed. Home Loan Mortgage Corp., 1996 WL 374178 at *1 (S.D.N.Y. July 1, 1996) (law of the case doctrine applies to issues that were actually discussed by the courts in the prior adjudication and to issues decided by necessary implication).  However, this Court in In re St. Casimir, 358 B.R. at 44, while noting that Alliant's service error did not stand in the way of assumption, did not address whether the Partnership Agreement was of the nature of a contract that could be assumed ***absent the non-debtor party's consent*** pursuant to § 365(c).  Section 365(c) prohibits assumption or assignment of executory contracts that are not assignable as a matter of "applicable law."

This Court stated in In re St. Casimir that "[i]f Alliant had sent the September 16 Removal Letter in accordance with § 15.4 [of the Partnership Agreement], there would be no argument-the Debtor would not be in a position to assume the contract."  In re St. Casimir, 358

B.R. at 44.  This Court's analysis focused only on whether the Debtor was properly removed pre-petition, and thus whether the contract had terminated.  Id. at 42-45.  Whether a partnership agreement was not assumable and assignable under § 365(c) due to prohibition by applicable law was neither raised by the parties, nor addressed, by either the Bankruptcy Court or this Court, in any prior proceedings.  This Court made clear that it had not addressed the relief from stay issues since it noted that relief from stay to terminate the Partnership Agreement would be a necessary step before a final removal letter could be sent.  St. Casimir, 358 B.R. at 45.  This Court went so far as to even suggest that the stay might be lifted in the future.  In re St. Casimir, 358 B.R. at 41 ("the automatic stay remains in effect and prevents Alliant from terminating the Debtor as General Partner *today*") (emphasis added).  The first time the Bankruptcy Court addressed whether the NYRLPA and § 365(c) precluded assignment of the Partnership Agreement absent Alliant's consent was when Alliant moved for relief from stay in the Bankruptcy Court after this Court's decision in In re St. Casimir.  As an appellate court, this Court will consider this issue for the first time in this appeal.[15]

The Bankruptcy Court was as careful as this Court to decide only the issue before it: the assumability of the Partnership Agreement in the context of the pending relief from stay.  See 2007 Tr. [D-21] at 46:17-24 ("And so long as the debtor is not removed, then it presumably can make a motion to cure.  And if mystically they came up with $2.2 million, or whatever the cure amount may be and they're not removed, then they could assume under Section 365.  ***But what is before me today is whether or not Alliant has the right to lift the stay for cause and that's***

---

[15]     This Court did consider § 121-402(c) of the NYRLPA, but merely to point out that an entity ceases to be a general partner of a limited partnership when it is removed in accordance with the partnership agreement, which is consistent with this Court's holding that, because the Debtor was not properly removed in accordance with the terms of the Partnership Agreement, the Debtor was still the general partner.  See In re St. Casimir, 358 B.R. at 45.

***really what I have to rule on***.") (emphasis added).  Accordingly, even if this Court overrules the Bankruptcy Court and other courts that have found that § 365(c) and New York  partnership law prohibit assignments of partnership interests in bankruptcy, the Bankruptcy Court's ruling granting Alliant relief from stay to terminate the Partnership Agreement for "cause" would still require affirmation of the 2007 Stay Order.

> 2.    Section 365(c) of the Bankruptcy Code and New York Limited Partnership Law Preclude Assignment of the Partnership Agreement Without Alliant's Consent.

Not only is the issue of whether § 365(c) would preclude the Debtor's assumption and assignment of the Partnership Agreement not barred by the law of the case, the Debtor's own cited authority confirms that the Bankruptcy Court's ruling regarding the non-assignability of the Partnership Agreement should be affirmed.  Section 365(c) provides that the Debtor "may not assume or assign any executory contract … whether or not such contract or lease prohibits or restricts assignment of rights … if applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor" unless such non-debtor party consents.  The applicable law here is Section 121-702(a) of the NYRLPA, which provides, in relevant part, "Except as provided in the partnership agreement, [a] partnership interest is assignable in whole or in part; [but a]n assignment of a partnership interest does not … entitle the assignee to become or to exercise any rights or powers of a partner."  N.Y. PARTNERSHIP LAW § 121-702(a) (McKinney 2005).

The Debtor cites two inapplicable cases, In re Adelphia, 359 B.R. 65 (Bankr. S.D.N.Y. 2007) and In re Schick, 235 B.R. 318 (Bankr. S.D.N.Y. 1999), for its two-part proposition that (i) the NYRLPA is not "applicable law" qualifying for the exception under § 365(c)(1)(A) and (ii) the Bankruptcy Court should have held an evidentiary hearing to determine whether Alliant

could be forced to accept the Debtor's proposed assignee of the day.  App. Br. at 21-22.  Neither the <u>Adelphia</u> nor the <u>Schick</u> case supports this argument.

In <u>Adelphia</u>, the court examined whether certain county and municipal cable television ordinances prohibiting assignment were "applicable law" under § 365(c)(1) and thus "enforceable against a trustee seeking to assume and assign a contract of the debtor."  <u>Adelphia</u>, 359 B.R at 77-78.  The court found that laws will be regarded as applicable laws under § 365(c)(1) where (i) they are issued under proper delegations of authority from the state; (ii) do not have the purpose or effect of conferring an economic benefit upon a particular party; and (iii) are laws of general application, enacted without reference to a particular agreement.  <u>Id.</u> at 69.  The <u>Adelphia</u> court found that some of the ordinances at issue passed muster under § 365(c)(1) and others did not, because many of them were enacted to address a particular contractual relationship.  <u>Id.</u> at 83.

The NYRLPA constitutes higher legislative authority than an ordinance.  It is a statewide law of general applicability that implements a valid regulatory concern: protecting partners from nonconsensual assignments of membership in partnerships.  The NYRLPA is thus applicable law under the <u>Adelphia</u> standard relied upon by the Debtor.  <u>Id.</u> at 72.  The court in <u>Adelphia</u> recognized the underlying policy behind § 365(c)(1)'s "applicable law" exception to assignment of partnership agreements: "that a contract counterparty might be prejudiced if contractual obligations were to be satisfied (or purportedly satisfied) by a person or entity other than the one from whom the contract counterparty originally was expecting to receive performance."  <u>Id.</u> at 73.

The NYRLPA regulates partnerships and partnership agreements, which, for purposes of § 365(c)(1)'s "applicable law" analysis, are comparable to non-assignable personal service contracts.  "[W]hile a personal services contract may be the epitome of the kind of contract as to

30

which 'applicable law' prohibits assignment without counterparty consent, the applicability of section 365(c)(1) is not limited to personal services contracts." Id. at 73 n.20.  Other authority is in accord that partnership agreements are in the nature of personal service contracts not capable of assumption without consent:  "[B]ecause of the partners' personal relationship and trust, the agreement or contract governing the partnership is essentially a contract for personal services." Breeden v. Catron (In re Catron), 158 B.R. 624, 627 (Bankr. E.D. Va. 1992); see Schick, 235 B.R. at 324 ("A partnership is often an intimate business relationship likened to a marriage or a family."); Stumpf v. McGee (In re O'Connor), 258 F.3d 392 (5th Cir. 2001) (partnership agreement not assignable under state law because personal relationship among partners not assignable under § 365(c)(1)(A)).

Ironically, the other case on which the Debtor principally relies upon (Schick) recognizes that the NYRLPA is the epitome of the type of law of general application whose restrictions on assignment are enforceable under § 365(c)(1).  At "the heart of the partnership concept is the principle that partners may choose with whom they wish to be associated."  Schick, 235 B.R. at 324 (citations and internal quotations omitted).  "The identity of any partner is material to the other partners, and the right to choose one's partners is a fundamental tenet of partnership law." Id. at 325.  The principle of *delectus personarum* (the choice of person) embodied in NYRLPA § 121-702(a)(2) "would be violated by the admission of a new speaking and voting member into the closely knit arrangement that typifies the general partnership." Schick, 235 B.R. at 324.  See also In re O'Connor, 258 F.3d at 402 (Louisiana partnership law is "applicable law" under § 365(c)(1)); In re Morgan Sangamon P'ship, 269 B.R. 652, 654 (Bankr. N.D. Ill. 2001) (Illinois partnership law is "applicable law"); In re Catron, 158 B.R. 624, 628 (Virginia partnership law is "applicable law").   The Bankruptcy Court knew, and correctly so, that NYRLPA § 121-

31

702(a)(2) and the established principles of partnership law barred the Debtor from forcing

Alliant to accept an assignee. "The restriction on the transfer of membership has been part of the

limited partnership laws since the promulgation of the original Uniform Limited Partnership Act

in 1916, *see* Unif. Partnership Act § 19(3), 6A U.L.A. 397 (1995)." Schick, 235 B.R. at 324. In

light of the personal nature of the Partnership Agreement in this case and of the well established

principles of partnership law, the Bankruptcy Court did not err when it held that § 365(c)

prohibited assignment of the Debtor's role as partner without Alliant's consent.

Schick not only contradicts the Debtor's argument that the Partnership Agreement is not

assumable, it also fails to support the Debtor's argument that an evidentiary hearing was

necessary before the Court could grant relief from stay. App. Br. at 24-26. In Schick, a general

partner in a limited partnership objected to the chapter 11 trustees' proposed assumption of the

debtors' rights and obligations under a partnership agreement (which had an anti-assignment

clause) and its assignment of those rights to a third party in connection with a sale of the debtors'

assets. Schick, 235 B.R. at 321. While confirming that a trustee could not compel assignment of

the debtors' status as limited partners over the objection of the general partner (id. at 324) the

Court found there were unique facts to be considered there in determining whether the consent

would be mandated due to the general partner's bad faith.[16] In other words, the court found that

the trustees ***could not force*** the objecting partners to admit the assignee "as their substitute

limited partner against their will," but that the objecting partners could not withhold their consent

in bad faith. Id. at 326, 329.

---

[16]    The debtor in Schick alleged that the general partner had exercised its discretion to object to the
assignment "for an improper motive" and the court held that where the general partner was "simply trying to force
the trustees to sell their interests on the cheap" to the general partner, an evidentiary hearing would be required to
determine whether the general partner breached its duties of good faith and fair dealing by objecting to the
assignment of the debtors' rights in the partnership. Id. at 324, 328-29.

Schick does not require that Alliant be forced to justify its "reasons for excluding a proposed assignee as 'non-pretextual'" because the Debtor cannot claim the Alliant acted in bad faith. App. Br. at 24. The Debtor's claims that Alliant breached the Partnership Agreement and acted in bad faith have already been firmly rejected. See Apr. 2006 Tr. [A-18] at 45:25-46:19; 2007 Stay Order [D-22] at 2 ¶(g). Ironically, the only evidence of bad faith before the Bankruptcy Court was that committed by the Debtor. See supra at 16-18; 2007 Tr. [D-21] at 25:12-16 ("The [Debtor's] default which ballooned, as the district court held, have never been cured. The [Debtor's] breach of fiduciary duty which I found to have existed, where the debtor used partnership funds not pay the mortgage, but to pay insiders entities, still exists"); id. at 53:2 ("[T]his debtor has engaged in manifestly bad faith conduct."); id. at 53:9-14 ("[A]fter the filing of the bankruptcy the debtor used basically partnership funds to pay insiders on pre-petition claims, funds that should have been used to pay the mortgage and reduce the arrears [which] constituted a breach of fiduciary duty."); id. at 53:15-17 ("This debtor used misappropriated tenant security deposits, tenant rental security deposits, misappropriated those and used those funds."). The evidence further demonstrates that rather than acting in bad faith, Alliant has acted to save the Partnership by paying down the mortgage debt, making improvements to the property, and increasing the occupancy of the building. See 2007 Tr. [D-21] at 55:7-13; 2007 Stay Order [D-22] at 2 ¶(d); Jan. 2007 Doran Decl. [D-8, Ex. B] ¶¶ 6-10. The Debtor cannot now argue that Alliant rejected a proposed assignee in bad faith since no firm offer has been presented to it as the Bankruptcy Court has found. 2007 Tr. [D-21] at 16:21-22 (Debtor's proposals are "still a figment of somebody's imagination."). Schick does not require an evidentiary hearing here. Id. at 56:5-7 ("Even now, the debtor has made no demonstration of any likelihood, any realistic likelihood of finding financing.").

3.      The Debtor's Analogy to Lease Cases Invalidating Anti-
        Assignment Clauses Falls Flat.

The Debtor cites a panoply of cases for the proposition that courts will void contractual anti-assignment provisions in commercial leases. Ap. Br. at 29-32. This appeal and the 2007 Stay Order, however, do not involve leases, but instead a non-assignable personal service Partnership Agreement. This critical distinction arises from the fact that there is no comparable *statutory* regime prohibiting the assignment of leases that would apply under § 365(c), whereas there is such a regime under partnership law as explained above. ***Contract*** provisions preventing the assumption of leases are ***not*** enforceable under § 365(f), whereas membership interests in partnership agreements are not assumable under applicable law pursuant to § 365(c). Thus, the cases cited by the Debtor are easily distinguishable. See In re Tobago Bay Trading Co., 112 B.R. 463 (Bankr. N.D. Ga. 1990) (enforcement of ***commercial lease's*** anti-liquidation sale provision inconsistent with policy of § 365); Coleman Oil Co., Inc. v. Circle K Corp. (In re Circle K Corp.), 127 F.3d 904 (9th Cir. 1997) (allowed debtor-lessee in default to assume and extend *lease* despite lease provision that conditioned such a right on existence of no default); South Coast Plaza v. Standor Jewelers West, Inc. (In re Standor Jewelers W., Inc.), 129 B.R. 200 (B.A.P. 9th Cir. 1991) (invalidating *ipso facto* provision in *lease* requiring lessee to pay landlord 75% of the appreciation value of the lease as condition of assignment under § 365(f)(1)); Robb v. Schindler, 142 B.R. 589 (D. Mass. 1992) (invalidating *ipso facto* provision in *lease* requiring 80% payback to lessor of assignment proceeds under § 365(f)(1)); In re Jamesway Corp., 201 B.R. 73 (Bankr. S.D.N.Y. 1996) (invalidating *lease* provisions requiring lessee to pay lessor profit or appreciated value of leasehold upon assignment as impermissible restriction on lessee assignment rights).

4.      There Is Substantial Evidence that the Debtor Lacks Equity in the
        Partnership Agreement.

While the Bankruptcy Court did not make a specific finding regarding whether the

Debtor had equity in the Partnership in a financial sense (see supra n.13), the Bankruptcy Court

did make findings and there is substantial evidence that the Debtor had no cognizable interest in

the Partnership and, thus, no equity.  Based on this evidence, this Court should affirm.  MFS Sec.

Corp., 277 F.3d at 617  (reviewing court can "affirm on any ground appearing in the record

below"); Center for Reprod. Law and Policy v. Bush,  304 F.3d 183, 189 (2d Cir. 2002).

The Debtor holds less than a 1% interest in the Partnership.  2005 Doran Decl. [A-2], Ex.

A, Partnership Agreement § 9.1.A.  In its bankruptcy petition, the Debtor stated that its equity

interest was valued at $5.6 million, but subject to the Mortgage liability in the amount of $9.6

million, in addition to other liabilities, reducing that value to a negative $5.222 million.  Petition

[D-1], Ex. H.

Although the Debtor appears to suggest without substantiation that this 1% interest could

increase at some point in the future adding unspecified value to the interest (see App. Br. at 6-7;

2007 Tr. [D-21] at 20:9-18 (Debtor's counsel speculating that some value could be obtained in

year 2014)), the Debtor no longer has any viable rights in the Partnership Agreement *today*.

Indeed, the Debtor's rights or equity in the Partnership would consist of only those rights under

the terms of the Partnership Agreement that existed as of the petition date.  This Court has

already held that the Debtor's right to cure the defaults under the Partnership Agreement expired

in April 2005.  In re St. Casimir, 358 B.R. at 42 ("To be sure, the Debtor's right to cure Major

Defaults expired in April 2005."); id. at 44 ("Debtor had no right to cure its defaults; that right

had expired back in April 2005, after the expiration of the fifteen days.").  The Bankruptcy Court

rightfully concurred.  2007 Tr. [D-21] at 39:19-40:3.  Therefore, short of the stay being lifted and

the Debtor being removed as general partner, the rights, if any, that the Debtor could assume

under the Partnership Agreement were always subject to Alliant's service of a final notice

removing the Debtor as general partner.  Thus, while the Bankruptcy Court did not specifically

conclude that the Debtor had no equity in the Partnership in a financial or balance-sheet sense (as

might be required in the case of secured creditor), it did determine that the confluence of (i) the

Debtor's inability to assume and assign its membership interests pursuant to § 365(c) and (ii) the

fact that its time to cure its defaults under the Partnership Agreement had already lapsed,

mandated stay relief under § 362(d)(2) because the Debtor lacked any equity (or interest) in the

Partnership Agreement.

       Finally, while the Debtor's interest in the Partnership may be more valuable now than at

the time of the filing of petition, as the Debtor appears to suggest (App. Br. at 6-7), the Debtor

should not receive a windfall from Alliant's investment of $1.5 million (Jan. 2007 Doran Decl.

[D-8, Ex. B] ¶¶ 6-7) and incur additional damages when it was unable or unwilling to make the

investment it was obligated to make under the Partnership Agreement.

### E.    The January 2007 Removal Letter Removed the Debtor When It Became Effective on February 26, 2007.

       The Bankruptcy Court did not specifically address Alliant's cautionary request for

retroactive annulment of the automatic stay in its Motion, which Alliant raised out of precaution

to ensure the effectiveness of the January 2007 Removal Letter.  This Court, however, can still

rule that the January 2007 Removal Letter was effective based on the record below.  Baker v.

Dorfman, 239 F.3d 415, 420-21 (2d Cir. 2000) (considering issue not decided below "where the

issue is purely legal and there is no need for additional fact-finding"); Coogan v. Smyers, 134

F.3d 479, 487 (2d Cir. 1998) (reaching the merits of a "purely legal issue that is easily

resolved").

The January 2007 Removal Letter was sent on January 4, 2007, while the 2006 Stay Order was still in effect (and not stayed pending appeal), and before this Court rendered its judgment on the appeals reversing the 2006 Stay Order. The ten-day period required to lapse in order for the Debtor to be removed would have expired on January 16, 2007. See supra pp. 10-11. This Court's judgment in In re St. Casimir was not entered by the clerk of this Court until January 17, 2007 (Docket No. 20). While under Bankruptcy Rule 8017, this Court's judgment would have become effective on January 29, 2007,[17] Alliant and the Debtor agreed to stay the effectiveness of such judgment until this Court's ruling on Alliant's Stay Motion. See Stay Stipulation at 2. Similarly, Alliant and the Debtor agreed to toll the effectiveness of the ten-day period described above until February 26, 2007. See id.; supra at n.11. Because this Court granted the Stay Motion, staying the effectiveness of this Court's judgment in In re St. Casimir, the Bankruptcy Court's 2006 Stay Order lifting the automatic stay was still in effect when the stipulated ten-day period for removal of the Debtor expired on February 26, 2007. Thus, the January 2007 Removal Letter effected the removal of the Debtor as general partner of the Partnership by providing final notice of its removal after the ten-day removal period ended on February 26, 2007.[18]

---

[17]   Because the ten-day stay period would have expired on January 27, 2007 (a Saturday), the period would have been extended to the next business day, or January 29, 2007. See Bankruptcy Rule 9006(a) ("The last day of the period so computed shall be included, unless it is a Saturday … in which event the period runs until the end of the next day which is not one of the aforementioned days.").

[18]   If the Court upholds the Bankruptcy Court's 2007 Stay Order and finds that the Bankruptcy Court properly lifted the stay prospectively, then Alliant's sending a notice of removal to the Debtor after entry of the 2007 Stay Order will be deemed proper, making this argument superfluous, although preserved for any further appeals.

## VII.    <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Alliant respectfully requests that the Court

affirm the Bankruptcy Court's 2007 Stay Order.

Dated: New York, New York
          July 2, 2007

                                   Respectfully submitted,

                                   HELLER EHRMAN LLP

                                   /s/ Russell L. Reid, Jr.
                                   Russell L. Reid, Jr. (RR 2011)
                                   Timothy S. Mehok (TM 8130)
                                   Times Square Tower, 7 Times Square
                                   New York, NY 10036-6524
                                   Telephone:  (212) 832-8300
                                   Facsimile:   (212) 763-7600

                                   Counsel for Appellees