RATTET, PASTERNAK & GORDON OLIVER, LLP
Attorneys for Appellant
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

DAWN K. ARNOLD (0642)
JAMES B. GLUCKSMAN (5722)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                    Bankruptcy Appeal

ST. CASIMIR DEVELOPMENT CORP.,            07 Civ. 2908 (CM)

                        Debtor.
------------------------------------------------------------X

**APPELLANT'S REPLY BRIEF**

# TABLE OF CONTENTS

**ARGUMENT** ................................................................................................ 1

**POINT I** ....................................................................................................... 2
THE DEBTOR CAN FREELY ASSUME AND ASSIGN ......................
ITS PARTNERSHIP INTERES ............................................................ 2

**POINT II** ...................................................................................................... 6
ALLIANT NEVER DEMONSTRATED LACK ....................................
OF EQUITY AND THE DEBTOR WAS NOT GIVEN AN ..................
APPROPRIATE OPPORTUNITY TO DEMONSTRATE.....................
THE PROSPECT OF REORGANIZATION .........................................
WITHIN A REASONABLE TIME........................................................ 6

**POINT III** .................................................................................................... 8
THE DEBTOR CAN REORGANIZE EVEN ........................................
IN THE ABSENCE OF A SIGNIFICANT CREDITOR BODY ........... 8

**CONCLUSION** ......................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.) ...... 3
In re Adelphia Communications Corp., 359 B.R. 65 (Bkrtcy. S.D.N.Y.,2007) ................ 5
In re Coltex Loop Central Three Partners, L.P., 138 F.3d 39 (2d Cir.,1998) ................ 1, 8
In re Loronda Murphy, 331 B.R. 107 (Bankr.S.D.N.Y. 2005) ......................................... 11
In re Masterworks, Inc., 100 B.R. 149, 152 (Bankr. D. Conn. 1989) ................................ 4
In re PPI Enterprises (U.S.), Inc. 324 F.3d 197, 206 -207 (3d Cir., 2003) ................ 10, 11
In re Schick  235 B.R. 318 (Bkrtcy.S.D.N.Y.,1999) ...................................................... 5, 6
In re St. Casimir Development Corp., 358 B.R. 24 (S.D.N.Y. 2007) ..................... 1, 2, 3, 4
Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir. 1984) ................................................... 4
Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522 (2d Cir.,1994) .................................. 3
United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd ........................ 1

**Statutes**

11 U.S.C. §1129 ............................................................................................................ 10, 11
11 U.S.C. §362 ..................................................................................................................... 7
11 U.S.C. §365 ................................................................................................................ 2, 10
NYRLPA §121-702 ............................................................................................................. 5
U.S.C. §1124 ..................................................................................................................... 10

**ARGUMENT**

Alliant, in its brief, ignores the fact that Appellant is not seeking retrieval of management, or the right to assign management rights, but is trying to preserve its economic interests as general partner in the Partnership.[1] Appellant respectfully requests that the Court focus on the impropriety of allowing the forfeiture of the Debtor's major economic stake in the Partnership by the improper means of lifting the automatic stay, without the benefit of so much as a proper evidentiary hearing.

Alliant and the Bankruptcy Court ignore the fact that the right of the Debtor to assume and assign its general partner interests were only ratified as of January 23, 2007, the date of this Court's decision in In re St. Casimir Development Corp., 358 B.R. 24 (S.D.N.Y. 2007). The period between January 23, 2007 and the February 15, 2007 date of the hearing on the motion to lift the automatic stay was hardly a "reasonable time", see, e.g. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd. 484 U.S. 365, 376, 108 S.Ct. 626, 633 (U.S. 1988) to allow the Debtor to reorganize and/or assume and assign the general partnership interest.

Finally, Alliant's argument that the Debtor must have significant outside creditors in order to be permitted to confirm a Plan of Reorganization must fail. Alliant relies upon In re Coltex Loop Central Three Partners, L.P., 138 F.3d 39 (2d Cir.,1998) for the proposition that plans may not be primarily for the benefit of the Debtor. This is only true where the creditor body is not being fully paid. In this case, any creditors, as well as Alliant, the contra-party to the Partnership Agreement, will receive full payment prior to the Debtor retaining its economic interests. The Coltex Loop, Id. case concerned a

---

[1] Unless otherwise defined, all capitalized terms and citations of documents to the record shall be identical to those provided in the Appellant's Brief dated June 8, 2007.

situation wherein the limited partnership interests of a single-asset debtor sought to retain their interests notwithstanding the objection to the plan by the mortgagee, who was receiving only partial payment, while the Debtor would retain the property. This situation is distinguishable since Alliant will be receiving cure of the Debtor's obligations under the Partnership Agreement in full. Thus, all of Alliant's arguments must fail.

## POINT I

### THE DEBTOR CAN FREELY ASSUME AND ASSIGN ITS PARTNERSHIP INTEREST

11 U.S.C. §365(a) provides:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Thus, 11 U.S.C. §365 governs the rights of a Debtor party and non-debtor contra-party to an executory contract. This Court, in In re St. Casimir Development Corp., 358 B.R. 24 (S.D.N.Y. 2007) stated:

> Alliant argues that its termination of the Debtor as General Partner renders moot the Debtor's ability to assume the Partnership Agreement under 11 U.S.C. § 365, because § 365 cannot revive a terminated contract. [FN6] Obviously, in view of the foregoing, that argument fails.
>
> *******
>
> Consequently, the Debtor's right to cure the defaults listed in the First and Second Default Notices expired April 19 and 29, 2005, respectively. From and after that time, Alliant had the absolute right to elect to terminate the Debtor as General Partner.
>
> ******
>
> [T]he issue must be whether termination requires the non-debtor party to undertake some post-petition affirmative act.... *When termination of the contract requires an affirmative act of the non-debtor party, the contract remains executory because such an act is stayed under 11*

2

> *U.S.C. § 362(a). When termination occurs without any action by the non-debtor party, the contract is no longer executory and no longer subject to assumption or rejection.*
>
> *********
>
> Therefore, because Alliant needed to take some additional affirmative action to effect the removal of the Debtor as General Partner and because Alliant's effort to take that action pre-petition was ineffective as a matter of law, the Debtor was never removed as General Partner. Consequently, the Debtor may choose to assume or reject the Partnership Agreement under § 365. In re St. Casimir Development Corp. 358 B.R. 24, 42-45 (S.D.N.Y.,2007).

Thus, absent the termination by this Court of the Debtor's time within which to assume or reject the Partnership Agreement, same is fully assumable.

Alliant is seeking to bootstrap its own erroneous victory in its motion to lift the automatic stay into something more; a determination that its notices, **issued pursuant to and as a result of the Court's decision, terminated the Debtor's interest, leaving nothing to assume.** If this Court reverses the Court's February 15, 2007 decision lifting the automatic stay (D-21) and the implementing Findings of Fact and Conclusions of Law dated February 28, 2007 (D-22) it is elementary that the subsequent notices of termination are themselves void as being violative of the automatic stay. See, e.g. 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir.1987); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522 (2d Cir.,1994). The Rexnord Holdings, Id. court stated:

> The stay is effective immediately upon the filing of the petition, Shimer v. Fugazy (In re Fugazy Express, Inc.), 982 F.2d 769, 776 (2d Cir.1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir.1991), and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect, see 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596,

3

99 L.Ed.2d 910 (1988). Rexnord Holdings, Inc. v. Bidermann 21 F.3d 522, *527 (C.A.2 (N.Y.),1994)

11 U.S.C. § 365 governs the time to cure an executory contract. See In re Masterworks, Inc., 100 B.R. 149, 152 (Bankr. D. Conn. 1989) at 151-2 [finding, in accordance with the Court in Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir. 1984), that §365 governs the cure period for an executory contract, and not §108]; See also Moody, Id..

This Court in St. Casimir, Id. stated:

> It is well-settled that, absent some showing of "cause," courts will not grant a limited partner's motion for relief from the automatic stay in order to remove the Chapter 11 debtor as general partner. See, e.g., In re Cardinal Indus., Inc., 116 B.R. 964 (Bankr.S.D.Ohio 1990). In re St. Casimir Development Corp. 358 B.R. 24, 41-42 (S.D.N.Y.,2007).

The Court, in In re Cardinal Industries, Inc. 116 B.R. 964, 982 (Bkrtcy. S.D.Ohio,1990) stated:

> Based upon the foregoing, the Court finds that the Debtor's Management Interest was not terminated by its bankruptcy filing pursuant to 11 U.S.C. § 365(e)(2)(A) and the *ipso facto* clauses are not to be given effect under the circumstances presently before the Court. Applicable nonbankruptcy law does not prohibit assumption of the Partnership Agreements by the Trustee on behalf of the estate simply because the agreements are not assignable to a third party. And, assumption by the Trustee on behalf of the estate when the performance is to be rendered by the Debtor for the benefit of the estate is not an assignment. Therefore, the automatic stay was not lifted as a matter of law and the Movants are not permitted to remove the Debtor as general partner. In re Cardinal Industries, Inc. 116 B.R. 964, 982 (Bkrtcy.S.D.Ohio,1990).

The Bankruptcy Court erroneously focused on the commercial harm to Alliant by the Debtor's pre-petition conduct and the delay occasioned by Alliant's own motion practice. This was reversible error. The Cardinal, Id. Court stated further:

4

> The Court's focus must be on the harm occasioned by the imposition of the stay itself. *Id.* [referring to In re Opelika Mfg. Corp., 66 B.R. 444, 449 (Bankr.N.D.Ill.1986)] at 448 ("cause to lift the stay exists when the stay harms the creditor"); Ginsberg, *Bankruptcy* para. 3306 (1985) ("a creditor can seek to have the stay lifted for cause when [the creditor] is hurt by the stay"). In re Cardinal Industries, Inc. 116 B.R. 964, 983 (Bkrtcy. S.D.Ohio,1990).

Chapter 11 inevitably delays the remedies of creditors. The mere delay of creditors does not create cause for relief from the automatic stay.

Appellant's Brief, at Pages 21 through 35 discussed the impact of the decisions in In re Schick 235 B.R. 318 (Bkrtcy.S.D.N.Y.,1999) and In re Adelphia Communications Corp., 359 B.R. 65 (Bkrtcy. S.D.N.Y.,2007). The principle of *delectus personarum* (the choice of person) embodied in NYRLPA §121-702(a)(2) is honored, even if the Partnership Agreement is assumed and assigned, since the Debtor as general partner would not retain management rights; the Debtor would retain only its economic stake.

The continuation of the automatic stay would not harm Alliant's interest in protecting itself from a property manager with whom it does not wish to do business; it would prevent Alliant from reaping an unjustifiable windfall by terminating the significant residual economic interests of the Debtor as general partner by the use of a few dollars of postage.

# POINT II

## ALLIANT NEVER DEMONSTRATED LACK OF EQUITY AND THE DEBTOR WAS NOT GIVEN AN APPROPRIATE OPPORTUNITY TO DEMONSTRATE THE PROSPECT OF REORGANIZATION WITHIN A REASONABLE TIME

11 U.S.C. §362(d)(1) and (2), applicable to proceedings in the case at bar, provide as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> (A) the debtor does not have an equity in such property;  and
> (B) such property is not necessary to an effective reorganization;

11 U.S.C. §362(g) provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property;  and
> (2) the party opposing such relief has the burden of proof on all other issues.

At the hearing on the motion to lift the automatic stay, the Debtor attempted to adduce evidence that it had a purchaser ready, willing and able to invest the necessary funds in order to allow the Debtor to assume and assign its general partnership interest to said purchaser. Appellant's Brief, Pages 19-21. The purchaser understood that under the Court's decision in Schick, Id. the partnership interest did not come with the right to manage the apartments owned by the Partnership. The Court, as demonstrated in the

6

following excerpt from the Lift Stay hearing (D-21), did not permit the Debtor the appropriate opportunity to present its case.

> THE COURT: Tell us, Mr. Nash.
>
> MR. NASH: Yes, Your Honor. It's true we don't have a formal proposal, but my client is very interested in this property. He has ties to Yonkers. He's interested in developing property in Yonkers. He's working on --
>
> THE COURT: When are we going to have something in writing?
>
> MR. NASH: I --
>
> THE COURT: Sort of show me the money. Where's the meat?
>
> MR. NASH: I just got involved in this on Tuesday, Your Honor.
>
> THE COURT: So you don't have any idea.
>
> MR. NASH: No, I do have an idea. I told Mr. Glucksman I needed about a two-week period to do due diligence, to review the documents, to review the issues on the building and within a period of about two weeks time I would be in a position to fish or cut bait and I'm not here to in any way impede the process. I'm here to try to help the process.
>
> THE COURT: So the idea is your client wishes to purchase and thereby become the general partner.
>
> MR. NASH: That's correct. [Transcript (D-21), Page 17 Line 23 to Page 18 Line 20]

Thus, the Bankruptcy Court did not give the Debtor the opportunity, prior to lifting the stay, to develop an economic plan, or consummate the assumption and assignment of the general partner interest.

All that the Debtor asked was a very short adjournment to allow Mr. Nash's client, Nicholas Sprayregen, to conduct due diligence, and demonstrate that the Debtor indeed had substantial equity. Since the burden was on Alliant to show lack of equity, granting the motion for relief from the stay was further in error. **The Court should be**

7

**aware that while the initial Chapter 11 petition was indeed filed on September 23, 2005, it was not until January 23, 2007 that the Debtor was able to present to any prospective investors a Court ruling demonstrating that it had the legal right and ability to assume its general partner rights.**

## POINT III

### THE DEBTOR CAN REORGANIZE EVEN IN THE ABSENCE OF A SIGNIFICANT CREDITOR BODY

In order to support its lunge to assert a forfeiture of a significant and valuable property interest of the Debtor, Alliant asserts, relying upon Coltex Loop, Id., that the Debtor requires a creditor body in order to confirm, and asserts, without support, that a Debtor can only confirm a Plan for the benefit of creditors, not for the Debtor. The Coltex Loop, Id. case stood for the proposition that where there were **unpaid** creditors, the Debtor could not, without meeting certain thresholds, confirm a plan which provided for retention by the equity holders of their interests in the Debtor. The Coltex Loop, Id. Court stated:

> Generally, a Chapter 11 reorganization plan may be confirmed only with the assent of each class of impaired creditors. 11 U.S.C. §§ 1126(c); 1129(a)(8). **If an impaired class of creditors rejects a plan, however, the plan, nonetheless, may be confirmed if the other requirements of confirmation are met and the plan is "fair and equitable."** 11 U.S.C. § 1129(b)(1) (the so-called "cramdown" provision). One of the attributes of a fair and equitable plan is that if an unsecured creditor is not paid in full, "the holder of any claim or interest that is junior to the claims of [the unsecured creditor] class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B)(ii). This is the "absolute priority rule." As will be explained, we think it is clear that the former equity holders, who are junior to the unsecured creditor class, will receive property under the Plan on account of their former interest, and that the Plan, thus, is not fair and equitable under the Code. In re Coltex Loop Central Three Partners, L.P. 138 F.3d 39, 42 (2d Cir., 1998).

8

11 U.S.C. §365(b) provides, in relevant part, as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
>
> (A) **cures, or provides adequate assurance that the trustee will promptly cure, such default**;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.
>
> (2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to--
>
> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>
> (B) the commencement of a case under this title;

Thus, the Debtor's default to Alliant must be cured under any assumption of the Partnership Agreement. 11 U.S.C. §1129(a)(10), providing the requirements, as to class and creditor acceptance of plans, provides:

> (10) **If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.**

The requirement of affirmative acceptance by at least one class of impaired creditors is triggered by the rejection of the plan by a class of creditors. 11 U.S.C. §1124 provides that if the Partnership Agreement is assumed, Alliant is unimpaired under the Plan. 11 U.S.C. §1124 provides:

> § 1124. Impairment of claims or interests

9

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan--
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default--
>
> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
>
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
>
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
>
> (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

The Court, in In re PPI Enterprises (U.S.), Inc. 324 F.3d 197, 206 -207 (3d Cir., 2003) found that a plan that pays all creditor claims in full is confirmable, notwithstanding the objection of a creditor receiving "full payment". The PPI Enterprises, Id. Court stated:

> The Bankruptcy Court here rejected such a broad reading of the 1994 repeal, concluding, "[M]y reading of the legislative history indicates that Congress merely intended to eliminate the anomalous result created by the *New Valley* decision. Thus, I conclude that Congress did not intend to eliminate unimpairment for purely money claims. It intended that to be unimpaired, the claim must receive postpetition interest." *PPI Enters.,* 228 B.R. at 352 (citation omitted); *see also In re Rocha,* 179 B.R. 305, 307 n. 1 (Bankr.M.D.Fla.1995) ("[A] solvent debtor must now pay post-petition and pre-confirmation interest on a claim to have a class considered 'unimpaired.' Section 1124(3) has been deleted in its entirety, which had previously allowed a class of

10

> creditors to be considered 'unimpaired' without paying interest on the claim."). The Bankruptcy Court also held that §§ 1124(1) and *207 1124(3) offered different tests for nonimpairment: "Section 1124(3) created nonimpairment status by a cash payment equal to the allowed amount of the claim but without postpetition interest. Such treatment could not qualify for nonimpairment under § 1124(1) because the failure to pay postpetition interest does not leave unaltered the contractual or legal rights of the claim." *PPI Enters.,* 228 B.R. at 352.
>
> In other words, § 1124(1) and § 1124(3) were different exceptions to the presumption of impairment, and the repeal of one should not affect the other. We agree with the Bankruptcy Court's analysis. Contrary to Solow's representations, the legislative history does not reflect a sweeping intent by Congress to give impaired status to creditors more freely outside the postpetition interest context. Instead, as the Bankruptcy Court noted, the legislative history accompanying the repeal of § 1124(3) indicated the "principal change" in the repeal "relates to the award of post petition interest." The congressional committee specifically referenced the *New Valley* decision without referencing the text of § 1124(1) or the many cases addressing its provisions, including *Solar King*. Therefore, the legislative history supports our holding. In re PPI Enterprises (U.S.), Inc. 324 F.3d 197, 206-207 (3d Cir., 2003).

In this case, the creditor that was being "fully paid" was a landlord whose claim was subject to the statutory maximum of 11 U.S.C. §502(b)(6). Similarly, Alliant will no doubt be dissatisfied by being "fully paid" since its objective is to reap a windfall by eliminating the Debtor's residual rights. In view of the case law allowing confirmation if all creditors are fully paid, Alliant's argument that, even if the Debtor assumes the Partnership Agreement it cannot confirm a plan of reorganization is pure sophistry.

There are certain provisions of the Bankruptcy Code, such as the right to avoid fraudulent conveyances and preferences that can only be used to benefit the creditors and cannot benefit the Debtor. See, e.g. In re Loronda Murphy, 331 B.R. 107 (Bankr.S.D.N.Y. 2005). There is no such restriction on the use of 11 U.S.C. §1129 to confirm a plan.

## **CONCLUSION**

Accordingly, this Court should reverse the Bankruptcy Court's Findings of Fact and Conclusions of Law (D-22) terminating the automatic stay.

Dated: Harrison, New York
       July 17, 2007

                      RATTET, PASTERNAK & GORDON OLIVER, LLP
                      Attorneys for the Debtor/Appellant
                      550 Mamaroneck Avenue
                      Harrison, New York 10528
                      (914) 381-7400

                      /S/ James B. Glucksman
                      _____
                        By: James B. Glucksman (5722)

To:   Heller Ehrman LLP
       Attention: Timothy Mehock, Esq.
       Attorneys for Appellee
       7 Times Square
       New York, NY 10036-6524
       (212) 832-8300